FORD *et al. v.* WILLIAMS.

An agreement, upon the mortgage of chattels, that the mortgagor shall keep possession and retail the goods for cash only, paying over the money to the mortgagee, is not fraudulent in law, but presents a question of good faith for the jury.

The attorney in an execution, who refused to state whether he directed the sale of particular chattels by instruction of his client, and challenged a suit against himself, is estopped from denying that he acted on his individual responsibility.

The owner of such chattels, who states his claim and forbids the sale, may purchase the property without impairing his right of action for the trespass.

A paper issued by a court of record in the form of a commission to take testimony, but without a seal, is a nullity, and depositions taken under it are not admissible as evidence.

APPEAL from a judgment of the Supreme Court. The action was for taking and carrying away personal property.

The judgment upon a verdict for the plaintiff taken on a former trial had been reversed by this court and a new trial ordered (13 N. Y., 577). On the second trial it appeared that S. Sutherland kept a retail hardware store at Newark, Wayne county; and on the 11th October, 1848, mortgaged his stock of stoves, hollow-ware, &c., and also his household furniture to the plaintiffs to secure them as the indorsers, for his accommodation, of a promissory note, made and indorsed at the time of giving the mortgage and discounted for the benefit of Sutherland at a bank at Geneva. The goods were seized on an execution in favor of J. & A. Morrison for $611.86, on the 13th January, 1849, and were subsequently sold by the under-sheriff of the county. These creditors resided at Troy and the defendant was their attorney in Wayne county, and in that character recovered the judgment and issued the execution. Two principal questions were litigated on the trial: whether the plaintiff's mortgage was *bona fide* or fraudulent; and whether, if it was valid, the defendant had made himself personally liable for the trespass by the part he had taken in procuring the seizure and sale of the property—he contending that he had done nothing beyond placing the process in the hands of the sheriff and communicating to him the plaintiffs' directions to have the property in question seized and sold, and executing an instrument of indemnity on behalf of his clients. It appeared that being aware of the mortgage to the present plaintiffs, the judgment creditors had elected to contest it by a seizure of the property, and for that purpose had, by letter, authorized their attorney, the present defendant, to sign in their behalf and in their names a bond of indemnity. This he did by executing an instrument to that effect under seal, which act was held, on the former occasion, not to charge him as a trespasser. But it was, in addition, sworn to by the plaintiffs' witnesses on the present trial that the defendant personally directed the under-sheriff to take the property in question and to sell it under the execution; and that during the sale when Ford, one of the plaintiffs, forbid it, the defendant directed the sheriff to go on, saying that he would protect

Ford *v.* Williams.

him, and that he was present and gave general directions at the sale. There was some contradictory evidence as to this. It was also shown that at an interview between Ford and the defendant after the sale, the latter was requested to state at whose request he acted in directing the sale of the goods, but refused to disclose, and, upon being told that he would be sued unless he would do so, he replied that the plaintiffs might sue him as soon as they pleased.

On the question of the *bona fides* of the mortgage it appeared that Sutherland continued in possession of the store from the time of executing it until the levy on the execution; and made sales of portions of the property, apparently in the same manner that he had done before the mortgage; but it was shown by the testimony of Sutherland, and of the plaintiff, Ford, that it was agreed when the mortgage was executed that Sutherland should sell the property as he could find purchasers for cash, but not on credit; and that the whole proceeds of the sales should be applied upon the note which the plaintiffs had indorsed. Sutherland swore that he had sold only to the amount of ninety dollars, eighty dollars of which had been applied in part payment of the note, and the remainder had been spent by him without the knowledge or consent of the plaintiffs, and that he had not made any sales on credit. There was evidence tending to show that one article had been sold on credit, but Sutherland swore that it was by a clerk, without his knowledge or consent. It appeared that the plaintiffs had purchased some of the articles at the sheriff's sale.

The defendant's counsel moved for a nonsuit, claiming that the testimony was not sufficient to charge him with such a participation in taking the goods as would make him a trespasser, and that the mortgage was void on account of the possession remaining in the mortgagor, and on account of the permission given him to make sale of the property; and also that the purchase of part of the property by the plaintiffs was a waiver of their title and a license to the sheriff to make the sale.

The defendant offered in evidence the deposition of a witness examined in Michigan, by virtue, as it was claimed, of a com-

mission; but it appeared that there was no seal to the paper called a commission. The judge, upon the plaintiffs' objection, ruled that it was inadmissible, and the defendant excepted.

The defendant presented a number of written propositions, the affirmative of which he requested the judge to charge; but the charge actually given, and the exceptions to portions of it, raise all the questions of law which were presented.

The judge charged, in effect, that the retaining of possession of the goods by the mortgagor rendered the transaction presumptively fraudulent, and that the burden of proof to rebut this presumption, and to show the mortgage to be fair and honest, was upon the plaintiff; that, where property mortgaged is of the character of that in question in this case, an agreement that the mortgagor might retain the possession and continue to sell it as he had done before, would make it fraudulent and void; but, in this case, if, by an arrangement between the parties honestly made, the plaintiffs allowed the mortgagor to sell a part and apply the proceeds towards the payment of the debt which the mortgage was given to secure, and there was no intention that the mortgage should be used as a cover to protect it from Sutherland's creditors, so that he might control and sell it for his own benefit, the transaction might be sustained. Upon the question of the defendant's liability, if the mortgage should be found to be valid, he charged that all who aided and abetted a trespasser were themselves liable for the tortious act; but that an attorney was permitted to do what appertained to his duty as an officer of the court without being chargeable as a trespasser if a seizure on the execution should prove to be unwarranted; "but if, beyond that, the defendant in this case personally interfered with the removal and sale of the property; if he aided and assisted, or directed the sheriff in the sale; if he directed the sheriff to go on, and pointed out the property to him; if he declared he would indemnify and protect those who bid on the sale, this would not be within the line of his duty, and would be an excess of his authority as an attorney, and would make him personally liable as a partaker and assistant, or aider, in the trespass." He added

that, if the defendant did this, on the sale, and refused to give up the names of his principals to the plaintiff when asked to do so by him, and if he told the plaintiff, on making such request, to sue him, he would be estopped, as the judge thought, from denying, in this action, that he personally directed the sale, or assumed the personal direction thereof. The defendant excepted to the foregoing two propositions; and he excepted to the judge's refusal to charge peremptorily that the mortgage, under the circumstances proved, was fraudulent and void.

The jury found a verdict for the plaintiff, and the judgment rendered upon it was affirmed at a general term; upon which, the defendant appealed here.

*Stephen K. Williams,* appellant, in person.

*George F. Comstock,* for the respondents.

DENIO, J. The chattel mortgage under which the plaintiffs claimed title was not illegal on account of anything contained in it; and, having been filed according to the statute, it was capable of being sustained against the creditors of the mortgagor by proof sufficient to rebut the inference of fraud arising out of the retention of possession by him. So far as concerned the debt which it professed to secure, the proof of *bona fides* was satisfactory. The plaintiffs indorsed a note to enable Sutherland to raise money at a bank, to pay off a judgment against him upon which an execution had been issued; and the mortgage now in question was given to indemnify them for their indorsement. So far, the transaction was quite fair and honest. But if the debtor was permitted, not only to retain the possession of the property mortgaged, but to sell it out by retail, on his own account, as he had been doing before the mortgage, we think, with the judge who tried the case, that the arrangement would be fraudulent and the security void. But it would not have been inconsistent with the nature of the transaction, or with good faith, that the mortgagees, by themselves or their agent, should have been permitted to sell the goods by retail, for cash, and apply the money which they

might bring towards the discharge of the debt which the mortgage was given to secure. This was what the plaintiffs professed to prove, only they made the mortgagor, instead of a third person, their agent. He, according to his own testimony and that of one of the plaintiffs, was to sell, in effect, as the agent of the mortgagees; for he was to sell only for cash, and was to apply the money towards paying the note. An arrangement in these terms might have been merely colorable, and a device to protect the property against the pursuit of other creditors. I would not advise a creditor to take a mortgage of such property, accompanied by such an agreement, for, in most cases, a jury would regard it with great suspicion, and would be apt to consider it a fraudulent contrivance; but such an arrangement may possibly be made without any improper views. Whether, in a given case, it was fair or fraudulent, would be a question of fact for the jury to determine. (2 R. S., p. 137, § 4.) It would be otherwise, if the question depended upon the effect of a written instrument, as we held in *Edgell* v. *Hart* (5 Seld., 213), or if it should arise upon an admitted or undisputed state of facts which showed an arrangement quite inconsistent with fairness and honesty, as where such an arrangement as that existing in *Edgell* v. *Hart* was made by parol outside of the mortgage; but where the transaction, though suspicious, is capable of a construction consistent with fairness and the absence of fraud, it must be passed upon by the jury. The charge in this case was in accordance with these views; and, if the defendant has failed to receive justice, it was not for the want of having the law correctly laid down by the judge.

I notice that the defendant insists that, where the mortgagor is suffered to retain the possession, the only points to be left to the jury are those relating to the consideration, and those adduced to explain the want of possession following the transfer. But, in my opinion, if there are any other circumstances of a suspicious nature attending the transfer, the explanation respecting such circumstances is to be addressed to the jury, unless they are of a character entirely inconsistent with

·the integrity of the transaction, and which no explanation either to the court or jury could make lawful. In that case, indeed, the court is to pronounce the law. But an agreement that the mortgagor may dispose of the goods for cash and bring the money to the mortgagee, the latter holding the title until such disposition· shall be made, may, as has been said, possibly be sincere and without fraud. The law does not, therefore, condemn it absolutely, but submits the question of good faith to the jury.

The evidence on the present trial was very full to show the defendant to have directed the seizure and sale of the property; and the rules of law as to what kind of participation in a trespass will implicate a person in the wrong, were correctly laid down by the judge. But the defendant objects to the ruling in which it was stated, that the fact that the defendant refused to disclose on whose behalf he was acting, and told the plaintiffs to sue him, estopped the defendant from denying that he directed the sale of the property. I think the case does not raise such a question. As I understand it, the charge was that if the defendant, besides directing the sale and promising to indemnify the bidder, refused to name his principals and invited the plaintiff to sue him that he would be estopped from denying his complicity. The substantial correctness of such an instruction cannot be doubted. But if the charge were such as the objection assumes, I think it would be right. The defendant certainly issued the execution and attended and countenanced the sale. It might be that, conceding these facts, he was not a trespasser, and that the officer and the plaintiffs in the execution were the only parties implicated, as we held when the case was here before; yet if he acted officiously, and beyond the scope of his duty as an attorney, or if he directed the execution to be levied on this particular property without instructions for that purpose by his clients, he would be liable. The present plaintiffs, after the sale, required an explanation on that point, which, according to the testimony, he refused to give, taking the responsibility upon himself by inviting the plaintiffs to sue him. This, if the testimony were

believed, would be a ratification on his part of the act of selling the property, which would render him subject to its consequences; and, in consequence of that declaration, if the plaintiff sued him instead of the other parties liable, he would be estopped from insisting upon a defence which, if allowed, would subject the plaintiffs to costs for acting on his invitation.

The remaining question is whether the deposition alleged to have been taken by virtue of a commission to Michigan was properly excluded. By the common law, the manner in which a court of record authenticated its process was by affixing its seal. It followed from that theory that a paper otherwise purporting to be a writ which lacked that evidence of its genuineness was a nullity. (*The People* v. *McKay*, 18 John., 212; *Tracy* v. *Suydam*, 30 Barb., 110.) Innovations have of late years been made upon this theory. The most important modification was that inserted in the judiciary act of 1847, where it is declared that no process, except such as should be issued by the special order of the court, should be deemed either void or voidable for the want of a seal when it should be signed by the attorney or party issuing it (p. 336, § 57). This case is within the exception, because commissions to take testimony in another State are issued only on motion, or where by stipulation a motion is waived. We have been referred to cases showing that process issued without a seal has been amended on motion. This is no doubt so, and it might be shown that the total failure of a necessary record or writ has been remedied by filing such a paper *nunc pro tunc.* But this practice does not touch the present case, where there had been no application to the court and no order in the matter.

It was no answer to the action that the plaintiffs became bidders upon portions of the property, after they had stated their rights and had forbidden the sale. It is no defence to an action of trover or trespass that the plaintiff has got back his property which the defendant wrongfully took or converted. In such cases the measure of damages is the sum paid to obtain the property. (*Murray* v. *Burling*, 10 John., 175; *Baker* v. *Freeman*, 9 Wend., 36.)

It follows from what has been said that no error was committed by the court below, and that the judgment ought to be affirmed.

All the judges concurring,

Judgment affirmed.