CHARLES G. MILLER, Respondent, v. ORRIN LOCKWOOD, Sher-
riff, &c., Appellant.

Where evidence has been given in respect to the *bona fides* of a mortgage, to
rebut the presumption of fraud, the finding of the jury thereon is conclusive.

The sum named as the consideration of a mortgage given as security for future
advances or indebtedness, and so stated therein, is of no importance.

The continued possession, in good faith, of the mortgaged property by the mort-
gagor, for purposes consistent with the object of the mortgage, is not, *per se*,
fraudulent.

An agreement between the mortgagee and mortgagor that the latter shall sell
the mortgaged property for cash only, for the benefit of the mortgagee, does
not render the transaction fraudulent.

Such agreement only raises the question of good faith for the jury.

A further indemnification of the mortgagee against loss by reason of the indebt-
edness for which the mortgage was given, does not prevent the enforcement
of his rights under the mortgage.

THIS action was brought to recover damages against the
defendant, a sheriff of Erie county, for taking and convert-
ing certain goods, &c., claimed to be the property of the
plaintiff. On the 16th of October, 1857, Henry Ramsdell,
the former owner of the goods, confessed judgment, on which
executions were issued on that day, to the defendant, who, by
virtue thereof, seized and took the said goods. The plaintiff
claimed to hold and own the same by virtue of a mortgage,
made and executed thereon, by Ramsdell to him, dated on
the 29th of September, 1857, to secure the plaintiff, Rams-
dell's indebtedness to him, which then amounted to between
five and six thousand dollars, and also for his liabilities as
indorsee for Ramsdell, and which liabilities then amounted to
between eight and nine thousand dollars. The mortgage
was declared to be a security for any debt, demand or liabil-
ity then incurred or held, or which might thereafter be in-
curred or held by the plaintiff, on account of, or against said
Ramsdell. The mortgage provided that upon default of
Ramsdell to pay any debt or obligation held by the plain-
tiff, or on which he might be liable when presented for pay-
ment, or at maturity, then he was authorized to take pos-
session of the mortgaged property and sell the same at public

or private sale, as he might deem most advantageous, and which mortgage was duly filed in Erie county clerk's office on the day it bears date.

The jury found a verdict for the plaintiff for the value of the property and interest, and found specially that there was an agreement made between plaintiff and Ramsdell, at the time of the execution of the mortgage, that the latter might sell the mortgaged property for cash only, and apply the proceeds in payment of the plaintiff's debt. Judgment was entered upon the verdict, and the defendant, having tendered a bill of exceptions, appealed to the General Term of the Superior Court of Buffalo, where the judgment was affirmed, and thereupon he appealed to this court.

*Henry W. Rogers,* for the appellant.

I. The motion for a nonsuit should have been granted.

1. The mortgage was *presumptively* fraudulent in consequence of the continued possession of the property in the mortgagor, and the plaintiff failed to remove that presumption.

Besides the fact of unchanged possession, which of itself presumes dishonest intent, and which presumption, by force of the statute, becomes conclusive, unless satisfactorily repelled by affirmative proof of good faith and honest intent towards creditors and purchasers, we find in the instrument itself and in the surrounding circumstances distinct *indicia* of fraud.

2. The pretended consideration for the assignment and the including of the $11,300 beyond the actual liability was an act of bad faith towards creditors, intended to deceive and keep them at bay.

II. The defendant offered to prove by the plaintiff that before and at the time of the dissolution of the firm of Ramsdell & Miller, and from thence down to, and at the time of the trial, the plaintiff was indemnified by David S. Miller, against any loss by reason of his indorsements and liabilities for said firm of Ramsdell & Miller, and for said Ramsdell; and also against any loss by reason of the indebtedness of

said firm and of said Ramsdell to him, including the debt
and indorsements which had been proved at the trial; and
the court improperly excluded the evidence.

III. The judge erroneously charged the jury that if they
should find that the mortgage was not fraudulent in fact, but
was made in good faith, and without any intent to defraud
creditors or subsequent purchasers, and should find that it
was verbally agreed between the plaintiff and Ramsdell, on
the 29th of September, 1857, that Ramsdell should confine
his sales of goods to sales for cash, and apply the proceeds of
such sales exclusively to the payment of the debt secured by
the plaintiff's mortgage of that date, their verdict should be
for the plaintiff.

This was erroneous for the reason that the judge should
also have submitted the further question, raised by the proofs
in the case, and which was requisite to a correct determina-
tion of the plaintiff's right of recovery, namely: whether
the mortgage under which the plaintiff claimed was for the
same consideration and upon the same stock of goods as that
of April, 1857, which it replaced, and if so, whether the
substitution of one for the other was a merely colorable
device.

IV. The apparent indebtedness of the mortgagor to the
plaintiff of $25,000,. by the fictitious addition of $5,000
beyond that of the mortgage it was made to replace, and of
over $11,000 above the actual indebtedness, if unexplained,
is utterly inconsistent with honesty of purpose, was fraudu-
lent in law as well as in fact, and the judge should have so
instructed the jury.

This he was substantially requested to charge, but refused
to do.

*A. P. Laning*, for the respondent.

The principal question in this case arises upon the motion
for nonsuit, upon the ground that the mortgage was fraudu-
lent as to creditors. Since it will be conceded that if the
plaintiff was entitled to go to the jury upon the *bona fides*
of the mortgage, their finding is conclusive of that fact.

The *bona fides* of the mortgage was a proper question for the jury, because,

I. The intention of the statute was not to prohibit or obstruct honest and lawful assignments, or mortgages as security, but to prevent fraudulent ones, and that *by means of its rule of evidence*, prescribed in such cases.

For that purpose it makes the want of change of possession of a mortgaged chattel, *presumptive evidence* of fraudulent intent, and conclusive *evidence*, unless it shall be made to appear on the part of those claiming under the mortgage, that it was made in good faith, and without intent to defraud, ·&c.

It further makes the intent *in all cases* a question of fact.

It follows, therefore, that every case arising under the statute must be determined by the intent of the parties to the instrument, and that the party claiming under the mortgage, has the absolute right to raise the issue of intent, by proof and of a jury to try such issue. There is no such thing as a legal fraud, as distinguished from fraud in fact. (2 R. S., 3d ed., 195, § 5; ib., 197, § 4; *Smith* v. *Hoe & Acker*, 23 Wend., 653; *Butler* v. *Stoddard*, 20 Wend., 547, VERPLANK, Senator; *Hanford* v. *Archer*, 4 Hill, 271; *Seward* v. *Jackson*, 8 Cow., 406, ALLEN, Senator; *Willis* v. *Orser*, 6 Duer, 322; *Willis* v. *Jones*, 6 Duer, 504; *Stewart* v. *Slater*, 6 Duer, 95, 96.)

· It follows from this, that the court can *in no case* refuse to submit the question of intent to the jury, except where the case of the claimant shows a transaction fraudulent *in fact*, from which the law, upon settled principles, conclusively implies a fraudulent intent, irrespective of any inquiry as to an *actual* intent to defraud.

And this is not a violation of or exception to, the rule, for the intent is still made a question of fact, but the claimant showing actual fraud, is conclusively held to have intended it, and to have furnished evidence of such high and conclusive character as he is not at liberty to rebut or gainsay. (*Edgell* v. *Hart*, per WELLES, J., 13 Barb., 38; *Ford* v. *Williams*, 24 N. Y., 359.)

II. The material question is now, did the plaintiff in this cause show a fraud in fact upon the rights of creditors, within the principle of *Edgell* v. *Hart, supra,* so as to require the court to direct a verdict, without submitting the question of intent to the jury.   He did not, because,

1. The mortgage was unimpeachable in form.

2. It was given to secure a *bona fide* and honest debt.

3. It provided for complete and absolute dominion over the property by mortgagee.

4. The proof tended to show that plaintiff allowed Ramsdell to interfere with the property, only for the purpose of applying it to the mortgage debt.

In *Edgell* v. *Hart, supra,* the case *showed* upon the face of the mortgage, a transaction *fraudulent in fact,* without reference to the intent or motive, because it *stipulated,*

1. Possession in mortgagor without limit, so long as he sold for cash.

2. That he might sell for cash without restriction, as to price, quantity, or disposition of proceeds.

3. That he might sell on credit without forfeiting his rights, unless the mortgagee so *elected.*

4. It covered future acquisitions.

5. It gave the absolute disposition of the property to the mortgagor, without the power of interference, either by the mortgagee or creditors.

It is observable that these powers were given by the schedule annexed to the mortgage, in the absence of which the mortgage was valid in form, and the case must have gone to the jury.) Per WELLS, J., 13 Barb., 387, 388; DENIO, Ch. J., 5 Seld., 216; *Ford* v. *Williams,* 24 N. Y., 359.)

III. The *bona fides* of the mortgage was established by the general verdict of the jury, and, in addition, they found, by their special verdict, *that at the time of the execution of the mortgage it was agreed between the mortgagor and mortgagee that the mortgagor should sell the goods mortgaged for cash only, and apply the proceeds upon the mortgagee's debt.*

There is no distinction between this case and that of

*Ford* v. *Williams* (24 N. Y., 359), in this respect; in which this court held such an agreement and mortgage valid.

It is competent for an assignee, for the benefit of creditors, to make the assignor an agent to carry out the purposes of the trust. (*Hitchcock* v. *St. John*, 1 Hoff. Ch., 521; *Nicholson* v. *Leavett et al.*, 4 Sandf., 252; *Shattuck* v. *Freeman*, 1 Met., 10, 14; *Browning* v. *Hunt*, 6 Barb., 95.)

Such was the relation of the mortgagor under this agreement.

The motion for a nonsuit was therefore properly denied.

DAVIES, J.   The principal questions presented for consideration in this case arise upon the motion for a nonsuit.

It is claimed on the part of the appellant, that such motion should have been granted for the following reasons:

1. That the mortgage was presumptively fraudulent, in consequence of the continued possession of the property in the mortgagor, and that the plaintiff failed to remove the presumption.

2. The amount or consideration mentioned in the mortgage being $25,000, and the actual amount of liabilities and indebtedness at the date of the mortgage being only $13,700, the including of the sum of $11,300 beyond the actual liability was an act of bad faith toward the creditors, intended to deceive and keep them at bay.

3. That the agreement to sell for cash only, and for the plaintiff's exclusive benefit, rendered the mortgage void.

As to the first ground, it is clear that the question of fraudulent intent belonged exclusively to the jury, as a question of fact, and it would have been improper for the court to have withdrawn it from their consideration.   The burden was cast upon the plaintiff to make it appear to the jury that the mortgage was made in good faith, and without any intent to defraud creditors or subsequent purchasers.   Evidence had been given of the *bona fides* of the parties to the transaction, and it was for the jury to determine whether or not the plaintiff had removed the presumption of fraud. The verdict of the jury on that question is conclusive in plaintiff's favor.

Neither was the amount or consideration named in the mortgage, being larger than the actual amount of indebtedness and liabilities existing at the date thereof, any legal evidence that the same was fraudulent. If that amount was put in there with a fraudulent intent to magnify the plaintiff's debt or liability beyond the actual amount thereof, and to keep the creditors of Ramsdell at bay, such circumstance was a proper element for the consideration of the jury in determining the *bona fides* of the transaction. It afforded no legal presumption of fraud, coupled as it was with the declaration upon the face of the mortgage, that it was given and intended as a security, not only for any debt, demand or liability then incurred or held, but such as might thereafter be incurred or held by the plaintiff on account of Ramsdell. This was full notice that the sum named did not cover, and was not intended to cover only the actual indebtedness or liabilities existing at the date of the mortgage, but in addition, such as might thereafter be incurred by the mortgagee on account of the mortgagor. But on a security of this character, the sum or amount named as the consideration is of no moment, as the mortgage stands as a security for the amount of liabilities or indebtedness, whatever the sum may be, and it is not essential even that any amount should be named in the security. This point was distinctly ruled in *Robinson* v. *Williams* (22 N. Y., 380). The consideration named in the mortgage given in that case was $1, and it was given to the Hollister Bank to secure further discounts and advances by the bank to the mortgagor. We then held, that a mortgage of land to secure further advances, the limit of which is not defined, is good for the amount of the advances thus made, as against a creditor by judgment recovered before such advances become due. The cases referred to in the opinion in that case abundantly sustain the doctrine enunciated. *Shirras* v. *Craig* (7 Cranch, 34), is not unlike the present case. In that case, the real transaction did not appear on the face of the mortgages. The trust deed in that case purported to secure a debt of £30,000, due to all the mortgagees. It was really intended to secure different sums,

due at the time to particular mortgagees, advances afterwards to be made and liabilities to be incurred to an uncertain amount. Chief Justice MARSHALL said that it is not denied that a deed which misrepresents the transaction it recites, and the consideration on which it is executed, is liable to suspicion. It must sustain a rigorous examination. It is certainly always advisable, fairly and plainly to state the truth. But if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed, of his real equitable rights, unless it be in favor of a person who has been in fact injured or deceived by the misrepresentation. The doctrine of these cases has been approved in *McKinstee* v. *Babcock* (26 N. Y., 378). The party claiming under the mortgage had a right to go to the jury to establish the good faith of the transaction, and if it appeared to them on a rigorous examination, that all that had been done was honest and fair, and that the parties claiming adversely had not been injured or deceived by anything contained in the mortgage inconsistent with the truth, then the jury were warranted in finding that there was no fraud.

It is also claimed that the mortgage was rendered fraudulent by the agreement between the mortgagor and mortgagee that the latter should sell the mortgaged property for cash only, for the exclusive benefit of the mortgagee.

The precise point covered by this objection was decided by this court in *Ford* v. *Williams* (24 N. Y., 359), when it was held that an agreement upon the mortgage of chattels, that the mortgagor should keep possession of the mortgaged property, and retail the goods for cash only, paying over the proceeds toward the discharge of the debt which the mortgage was given to secure, is not fraudulent in law, but presents a question of good faith for the jury, and was also held that when the transaction, through suspicion, was capable of a construction consistent with fairness and the absence of fraud, it must be passed upon by the jury.

These views dispose of the motion for a nonsuit, and show that it was properly refused.

I am unable to perceive any error in the exclusion of the offer by the defendant to prove that before and at the time of the dissolution of the firm of Ramsdell & Miller, and from thence down to, and at the time of the trial, the plaintiff was indemnified by said David S. Miller, against any loss by reason of his indorsements and liabilities for said firm of Ramsdell & Miller, and for said Ramsdell, and also against any loss by reason of the indebtedness of said firm and of said Ramsdell to him, including the debts and indorsements which had been proved at the trial. Assuming the fact to be that the plaintiff had such indemnity, it would not follow that he could not enforce the rights secured to him by this mortgage. Nothing appears which would have justified the court in holding that the existence of such indemnity would preclude him from looking to his mortgage security. It may well be that such indemnitor for the liabilities of Ramsdell,—and it was proven on the trial that he held the mortgage for Ramsdell's individual indebtedness,—could have compelled the plaintiff to have resorted to his mortgage security, before calling on him on his indemnity. However that may be, the fact of such indemnity existing created no obstacle to the right of the plaintiff to claim the security of his mortgage, neither would the proof of the fact that such indemnity had been given by the brother of the plaintiff, have warranted the jury in discrediting the testimony given by the plaintiff on the trial. The offer was, therefore, properly overruled. The charge to the jury seems to be unobjectionable. It stated the principles of law correctly, which should govern the jury, and the legal result, if they should find that the mortgage was not fraudulent in fact.

The two requests to charge were properly refused upon the authority heretofore commented upon. The verdict of the jury disposing of the question of fraud in fact adversely to the defendants, the judgment was correct, and should be affirmed.

POTTER, J., dissenting. The plaintiff claimed title to the goods in question, by virtue of a chattel mortgage given by

one Henry Ramsdell. The defendant was the sheriff of Erie county, and claims the title to the same property, by virtue of five several judgments in the Supreme Court against the said Ramsdell, and executions issued thereon to him as sheriff; and by virtue of which he levied on the same goods, being at the time in the possession of said Ramsdell. The goods in question were merchandise, consisting of boots, shoes, trunks, carpet bags and the like. Ramsdell was, and for years had been, a dealer in those articles, and carried on the business of selling at wholesale and retail for cash and for credit, and had applied the proceeds of such sales to his own use, with plaintiff's knowledge and consent. Plaintiff had for several years held mortgages on Ramsdell's stock of merchandise, changing them from time to time. The property was levied upon the 16th October, 1857, and on the trial was proved to be worth, with interest, $9,005.42. The plaintiff's last mortgage, and under which he now claims, was dated 29th September, 1857, seventeen days prior to the levy. The consideration was stated to be $25,000. It described the property in no other wise than as all the stock of boots, shoes, rubbers, trunks, carpet bags, goods, chattels, fixtures and personal property of every nature and description, now being and contained in store No. 166 Main street, Buffalo, as now occupied by the party of the first part. The mortgage stated that "this grant was intended as a security for the payment of any debt, demand or liability now incurred or held, or which may hereafter be incurred or held by the said Miller on account of, or against the said Ramsdell," and also a security against any liability of said Miller by reason of, or on account of any indorsement or undertaking which has been or may hereafter be made or incurred by said Miller for said Ramsdell, and is to be a continuing security for the above, and any and all expenses, costs, &c., to the amount of $25,000."

And it further provided, that upon default being made by said Ramsdell to pay any debt or obligation held by said Miller, or on which he might be liable when presented for payment or at maturity, said Miller might take possession

of the said property and sell the same at public auction after giving five days' notice thereof in any daily paper in the city of Buffalo, or might sell the same at private sale, at such time and on such terms and in such manner as said Miller might deem most advantageous to the parties. There was no time fixed by the terms of the mortgage for the payment of the sum named in it, other than is expressed above, nor was the character of the indebtedness otherwise given than naming the consideration to be $25,000. When the mortgage was given, the amount due to the plaintiff by Ramsdell, as proved by plaintiff on the trial, was between $5,000 and $6,000. The plaintiff was liable beyond this as indorser for him to the amount of $8,000 or $9,000; the aggregate of debt and contingent liability was $13,700.

This chattel mortgage under which the plaintiff claims title to the property in question had no schedule attached, nor was there any other enumeration of the *items* of property claimed to be covered by it. There was only in the body of the mortgage a general description of the character or nature of the property in which the mortgagor was dealing. This character of property was the necessary consequence of his business as a wholesale or retail dealer, and would necessarily be constantly changing. The items of goods on hand on any given day, to wit, on a day on which a mortgage was given, would not, of course, if business of buying and selling continued, be the same on any other or subsequent day. Though the quantity of goods in store might be increased by purchases, the articles mortgaged must of course be constantly diminishing by sales, so that, at the end of two or three weeks, there would be no absolute certainty that any one single item of the mortgaged property remained; and yet it will be seen that such an indefinite and general description as this mortgage contains, would cover just as well an entirely different and even a larger stock of goods of the same character, as it did the goods on hand at its date. If such a mortgage is not void for uncertainty of description of the property, it at least throws the burden of proof upon the party claiming under it, to show that the articles of property taken by a

judgment creditor are the same property that is covered by his mortgage. This was not done by the plaintiff; he produced no proof that the property levied upon was the property mortgaged. Besides, interpreting this mortgage by its own terms, which stated "that it was to be a continuing security" for $25,000, when there was only a contingent liability of the plaintiff for $13,700, no day of payment of the sum mentioned being named, being given to secure the plaintiff, not only for existing demands and liabilities, but such as might thereafter be incurred, and being given also as security for indorsements for Ramsdell which plaintiff might thereafter make, it must be held to have been intended by the parties to it that Ramsdell should continue to purchase and sell goods as a merchant, as he had done for years previous, under other and prior mortgages held by the plaintiff, either for cash or on credit; and that the mortgage should "be a continuing security" and lien, all the time on all goods of such description as was mentioned in the mortgage, as at any time might be and remain in the possession of the mortgagor. If this is to be held to be the legal intent of this written agreement, it was void as to creditors, and the judge erred in not nonsuiting the plaintiff on the trial.

The terms of the mortgage necessarily implies an intent, and the circumstantial proof confirms it, that the mortgagor was to continue to buy and sell goods according to the ordinary custom of wholesale and retail merchants; and to receive the proceeds to his own use, as he had done for years, with plaintiffs' knowledge and assent. And in this respect I cannot distinguish this case, in principle, from the case of *Edgell* v. *Hart* (9 N. Y., 213). As was said in that case, "The doubt, if there be one, is whether the law tolerates such an arrangement where the rights of creditors are concerned." "There was no traversable question respecting the intention of the parties." This was a question for the court in giving interpretation to the agreement. This is not the *intent* which the statute casts upon the jury to determine by reason of there being no change of possession of the goods; it was the legal intent, by fair interpretation, of the agree-

ment. It was further said in the case cited: "The law adjudges that they intended what the writing expresses." I think we may add that this is so, whether it is expressed in terms, or by necessary implication, and the court may look at the surrounding circumstances in aid of such interpretation. It would be incompetent for either party to show, if they were possessed of the most persuasive evidence, the instrument to have a different operation from the one the law assigns to it." The argument of DENIO, J., in the case cited, pages 217, 218, is conclusive of this case. It is but a repetition of the same doctrine that was held in *Griswold* v. *Sheldon* (4 N. Y. [Comst.], 581), by BRONSON, J., concurred in by RUGGLES, JEWETT and McCOUN, JJ. He said, page 587: "If it is apparent, from the face of the deed, that the plaintiff intended that Burdick (the mortgagor) should not only have possession, but should be allowed to deal with the property as though he were the owner, no one will pretend that the mortgage can stand as against creditors and purchasers." That was also a case of a mortgage on a store of goods, where the goods were placed, and for the purpose of using it as a store. RUGGLES, JEWETT and McCOUN concurred with BRONSON on the ground that such a mortgage was void on its face. True, there was an equal division of the court on that question in that case, but the rule I have cited has been, as I regard it, established in *Edgell* v. *Hart*, confirming the same principle, as it was laid down in the case of *Wood* v. *Lowry* (17 Wend., 492), and holding that the case of *Smith* v. *Acker* 23 Wend., 658), does not establish a different rule. There is no case that has gone so far as to hold that the legal interpretation to be given to written agreements is a question for the jury. The case that has gone farther than any other in this direction, is *Ford* v. *Williams* (24 N. Y., 359). On the question of the *bona fides* of the mortgage, it was shown that the mortgagor continued in possession of the store from the time of executing it, and made sales of portions of the property apparently in the same manner as he had done before the mortgage; and it was proved by both parties to the mortgage, on the trial, and the judge allowed the proof, that

when it was executed, it was agreed between them that the mortgagor should sell as he could find purchasers, for cash only, and that the whole proceeds of the sales should be applied upon the note to secure which the mortgage was given. Denio, J., in commenting upon this evidence, says: "But if the debtor was permitted not only to retain the possession of the property mortgaged, but to sell it out by retail on his own account, as he had been doing before the mortgage, we think, with the judge who tried the case, that the arrangement would be fraudulent and the security void;" and after saying he would not advise creditors to resort to such a suspicious kind of security, he adds, "whether in a given case it was fair or fraudulent, would be a fact for a jury to determine;" he says, "it would be otherwise if the question depended upon the effect of a written instrument, as we held in *Edgell* v. *Hart*" (*supra*). In the case before us, there was no such agreement in or out of the written mortgage between the parties, though the plaintiff was permitted to prove, under objection, a conversation between the plaintiff and his mortgagor on the day of executing the mortgage, after its execution, as follows: "I (plaintiff) told him I wanted him to confine his sales to sales for cash, and apply the receipts to the payment of the paper on which I was liable as indorser, and I advised him to apply the receipts from collections to other confidential debts, and let the other debts go until his confidential ones were paid. He said he would do so; he seemed to assent to my views of the matter. He said he did not mean that I should lose a dollar by him, and was willing to secure me and execute the mortgage." If such conversation was admissible as evidence, it did not amount to an agreement between the parties. It amounts at most to mere advice given by the one, and an assent by the other, to follow the advice. Conversations and propositions made before or after a written agreement cannot be proved to explain it, or to add to that which is to be, or has been reduced to writing. The written agreement between the parties to it appears to be a complete agreement. The well established rule of law applicable to such agreements is, that

the parties can neither add to, contradict or explain it by parol evidence. It is also a rule that instruments which give details or particulars are to be presumed to be complete. (*Filkins* v. *Whyland*, 24 N. Y., 338; 1 Wend., 424.) If this conversation could amount to a valid agreement, and is either the important part of the written one, or is a separate agreement as is claimed, it is void as against creditors for not being filed. If our statute in relation to fraudulent conveyances is worth preserving, the courts have gone quite far enough in the direction of a judicial repeal of its provisions, and of impairing a confidence in its policy. If there is one provision of the statute that is clear, it is that which requires all such agreements to be in writing. (2 R. S., 136, § 3.)

And it is only such *written* agreements that have been *filed* that are good against creditors. (Sess. Laws, 1833, p. 402; *Bank of Rochester* v. *Jones*, 4 Comst., 498; *Thompson* v. *Blanchard*, 4 id., 308.) No one will question the position, that with full knowledge of all the terms of the mortgage, any party purchasing goods of the mortgagor, by items or in gross, for cash or on credit, would obtain good title to the article purchased of the mortgagor. The statute puts creditors upon an equality of rights with purchasers. The case of *McKinstee* v. *Babcock* (26 N. Y., 378), has no bearing upon this question. It holds that evidence may be given to show what was the real consideration of a mortgage. This had long been settled law in regard to the consideration of deeds. Nor is the case of *Ford* v. *Williams* (24 N. Y., 359), in conflict with the rule we hold in this. That case approaches this only as far as it presented a similar question as one of *bona fides* for the determination of a jury.

I think the judge on the trial erred in the admission of the evidence offered by the plaintiff, of conversations between himself and the mortgagor, at various times, before the execution of the mortgage, and on the same day, and on days subsequent. These conversations related to matters of business of the mortgagor, of advice to him by the plaintiff about his manner of conducting his business in future. These

conversations were objected to as evidence by the defendant, the objections overruled by the judge, and the defendant duly excepted. We are furnished with no authority to sustain these rulings. Acts, and even sometimes declarations of the parties to a transaction, may be proved as forming part of the "*res gestae*," showing the character of the principal fact. This evidence does not come within that rule, it is put upon no such ground, nor could it be. It seems to me to be clearly error. If, against a case of presumptive fraud, a party can prove his own avowal of integrity to establish his *bona fides*, he would never be defeated, he would be sure to make them strong. The evidence of presumptions could never avail against him. The error, it seems to me, to be too palpable to admit of discussion. I think the judgment should be reversed, a new trial ordered, costs to abide the event.

BROWN, J., concurred with POTTER.

Judgment affirmed.