## LANE V. STARR.

1. In a chattel mortgage upon a stock of merchandise, an agreement between the mortgagor and mortgagee that the former shall remain in possession and make sales of the mortgaged stock as the agent of the latter, accounting monthly to him, until the indebtedness is paid, will not of itself render the mortgage *prima facie* fraudulent as to creditors.
2. In such case the sales are made for the mortgagee, and are charged against and reduce the mortgage debt as fast as made.
3. The fact that the mortgagor and mortgagee are brothers is not, in the absence of, and unconnected with, other facts and circumstances tending to throw suspicion on the transaction, evidence of fraudulent intent.

(Syllabus by the Court.   Argued Feb. 7, 1890.   Opinion filed May 1, 1890.)

Appeal from district court, Spink county; Hon. LOUIS W. CROFOOT, Judge.

Action to recover the value of property levied upon and taken under attachments and executions. From a judgment in favor of the plaintiff the defendant appeals. Affirmed.

The facts are fully stated in the opinion.

*C. T Howard* and *H. C.* and *T. J. Walsh* (*John B.* and *W. H. Sanborn, of counsel*) for appellant.

The courts of the different states are divided into two classes, as marked by the position they have taken relative to the validity of a mortgage containing a provision for the mortgagor's possession of mortgaged goods, with power of disposal. The first class, notably Iowa, Michigan and Massachusetts, holding the transaction *prima facie* evidence of fraud, and the question of fraud one of fact for the jury; the second class, embracing the

states of Colorado, Illinois, Minnesota, Missippi, Missouri, New Hampshire, New York, Ohio, Oregon, Tennessee, Wisconsin, Virginia and Montana, holding the transaction conclusively fraudulent. This state must be numbered with the second class. First Nat. Bank of Pierre v. Comfort, 28 N. W. 855. Various of the courts of the states of the second class hold that no covenant in relation to the disposition of the proceeds can redeem the transaction from taint. Others hold that guarded by proper covenants in relation to the disposition of the goods and application of the proceeds, the transaction is legal. The former is the logical rule. Long v. Lee, 3 Rand 410; Adding-ton v. Etheridge, 12 Gratt. 436; Davis v. Ransom, 18 Ill. 396; Leopold v. Silverman, 16 Pac. 580; Blakeslee v. Rossman, 43 Wis. 116; Price v. Mazange, 31 Ala. 396; Jones Chattel Mort-gages 424. These covenants, as settled by different courts, are 1. That sales must be made by mortgagor only in the usual course of trade. Jones on Chattel Mortgages, § 379 *et seq.* Meyer v. Gage, 22 N. W. 892; Clark v. Hyman, 7 N. W. 386; Sperry v. Etheridge, 18 N. W. 657; Daggett v. McClintock, 22 N. W. 105; Davis v. Scott, 34 N. W. 353; Whittson v. Griffis, 17 Pac. 801; Wingler v. Sibly, 35 Mich. 221. 2. It must be pro-vided that the proceeds of the sale must be turned over to the mortgagor to pay the mortgage debt. 3. The possession must be held and sales made by the mortgagor as agent of the mort-gagee. Hawkins v. Hastings, Dill 462; Ford v. Williams, 24 N. Y. 359; Wilson v. Sullivan, 58 N. H. 260. 4. Must provide that sales shall be made for cash. Ball v. Stafter, 26 Hun. 353; Brockett v. Harvey, 91 N. Y. 214. Not one of these necessary covenants appear in the mortgage in question with the ex-ception of the third.

*N. P. Bromley* and *A. B. Mellville,* for respondent.

A mortgage upon a stock of merchandise is not necessarily fraudulent because it contains a provision allowing the mort-gagor to remain in possession of the mortgaged property and sell the same for the benefit of the mortgagee. Ford v. Wil-liams, 24 N. Y. 359; Conkling v. Shelley, 28 N. Y. 360; Brock et v. Harvey, 91 N. Y. 214; Robinson v. Elliott, 22 Wall. 524;

Kleine v. Katzenberger, 20 Ohio St. 110; Horton v. Williams, 21 Minn. 192; Clark v. Hyman, 56 Ia. 14; Meyers *et al* v. Gage, 22 N. W 892; Bannon v. Bowler, 26 N. W. 237: Wilcox .v. Jackson, 4 P. 966; Gay v. Bedwell, 7 Mich. 520. The jury found there was ·no fraud, and. their verdict should not be disturbed unless it should appear that there was no evidence whatever to sustain it. Moline Plow Co. v. Gilbert, 3 Dak. 238.

KELLAM, J. On the 7th day of June, 1888, the ·appellant, who was then sheriff of Spink county, levied upon a stock of drugs and other miscellaneous goods under attachments and executions against one C. J. Lane, then personally in possession thereof. The respondent, claiming to be the owner of the property so taken by virtue of a chattel mortgage executed to him by said C. J. Lane, brought this action against appellant to recover the value of the property so taken; and the question in controversy is as to the validity of respondent's mortgage as against creditors of the said C. J. Lane. The mortgage contains the following provision: "And it is further agreed between the parties hereto that until the said eighteen hundred thirty nine dollars is paid, according to the condition· of said promissory notes, by said Charles J. Lane to said William A. Lane, with interest at seven per cent., the said Charles J. Lane shall remain in possession of said goods as agent of said William A. Lane, and shall well and truly account to said ·William A. Lane or his assigns, monthly, for all sales made by him of the aforesaid property, hereby mortgaged, .until said sum shall be fully paid and satisfied; the intention of the said Charles J. Lane and william A. Lane being that the sale of the property herein specified be absolute to said William A. Lane until said indebtedness shall be fully paid, with interest, said Charles.J. Lane acting only as the agent of said William A. Lane in disposing of the goods hereinbefore mentioned, and accounting for the proceeds thereof, until said indebtedness is paid."

It is contended by appellant that this stipulation renders the mortgage at least presumptively fraudulent as against the creditors represented by appellant. To determine.the effect of this provision, we must first ascertain its meaning. Does it

mean that the mortgaged property shall remain in the possession of the mortgagor with a power of disposition on his own account, he undertaking only to account for the proceeds to the mortgagee?    Or does it mean that the mortgagor's possession is really that of the mortgagee; that the power of·sale is not a power which he reserves to himself, but a power with which he is invested as a means of executing the trust; and that the sales to be made out of the mortgaged goods are to be considered as made by the mortgagee?    Reading the language employed in this provision with strict and judicial impartiality, with no inclination either to straighten or bend, but gathering the design of the parties from the words they have used, can there be any serious doubt as to what they intended?    The mortgagor was to remain in possession, but as the agent of the mortgagee.    He was to make sales of the goods, but only for and in behalf of the mortgagee, and he was to render an account monthly until the indebtedness was paid.    These are the provisions.    They are plainly stated, and the immediate inquiry is as to the effect of such an agreement upon the mortgage.

Appellant contends that the mortgage permits the mortgagor to remain in possession with power of sale for his own benefit, because he is not required to turn over the proceeds of sales to the mortgagee, but only to account for them monthly; that a written statement would quite satisfy the requirement as to accounting; and that the money derived from sales might never be turned over and applied upon the mortgage debt.    If this were the legitimate or even possible effect of the agreement, we should regard it with great suspicion, but the very agreement complained of prevents such a result.    The mortgagor is authorized to convert the goods, not on his own account, but on account of the mortgagee.    The authority is express, definite, and limited.    If the sales were made for the mortgagee,· the proceeds were his, and applied to and extinguished the indebtedness pro tanto, whether ever actually turned over to him or not.    To convert the mortgaged property into money for the payment of the mortgage debt was the proper office of the chattel mortgage, and the creditors could ask

nothing more than that the debt be diminished as fast as sales were made; and this was just the legal effect of the agreement. The proceeds of sales became *eo instanti* the property of the mortgagee and a payment upon the indebtedness; and it could make no difference to creditors whether the mortgagee required his agent, the mortgagor, to immediately pay over the funds or not. The money realized from sales had done all for creditors that they could ask when it was applied to and went to pay the mortgage debt; and it became so applied by the fact of, and simultaneously with, the sale. It was not possible, within the the terms of this agreement, that any of the mortgaged goods or their proceeds should be diverted or misappropriated to the prejudice of creditors of the mortgagor. The monthly accounting may or may not have contemplated an actual transfer of funds between mortgagor and mortgagee. It surely meant a statement of sales, and consequently a monthly exhibit to the mortgagee of how much had been realized on, and was chargeable against, his debts secured upon the stock. Appellant's counsel argue that this view is inconsistent with the conduct of the parties in dividing up and putting the total indebtedness into several promissory notes, and making them become due at stated times, but it does not so look to us. It is fair to suppose, for so it would ordinarily occur, that the parties divided the debt into such sums, and made them payable at such times, as that the sales of goods would be expected to take care of them; but the maturity of each note simply fixed a time within which such notes must be so paid, and beyond which the mortgagor's right to so make sales for the mortgagee in reduction of his debt did not extend. It may be that, as between the parties to the mortgage, the effect of the giving and the taking of the notes would be to prevent the mortgagee requiring the mortgagor to pay over the funds realized from sales faster than the notes matured, and thus to extend to him a credit until that time. But the credit would be personal. It would not rest upon or bind the goods. As to creditors and as to the security, the debt would have been extinguished by and to the extent of the sales, and a corresponding result might have followed the contingency suggested in appellant's brief.

He. says: Suppose the first month's sales had amounted to enough to satisfy the entire demand of mortgage. How could the mortgagee have compelled the mortgagor to turn over the funds and take up notes not yet due? or how, on the other hand, could the latter have required the former to accept payment of his notes before maturity? We think this presents no problem difficult of solution, if the views we have just expressed are correct.

It is also urged that the power to sell is unrestricted, either as to manner or terms, and that such an unlimited authority, bounded only by the judgment or caprice of the mortgagor, is dangerous to the rights of other creditors. This might possibly be so, and we would be better satisfied with this mortgage if it allowed the mortgagor to make sales only in the usual course of trade. It must be remembered that there is no serious controversy in this case as to the genuineness of the debt which the mortgage was apparently made to secure. The grounds of challenge are in the mortgage itself. We are convinced, and have attempted to demonstrate, that there is shown no reservation for the benefit of the mortgagor, express or implied, positive or contingent. Ought we now to hold that the failure of the mortgage to restrict the mortgagor in the execution of his power to sell as agent, and for the exclusive use of the mortgagee, to the usual course of trade, is presumptively fatal to the validity of the mortgage? We confess to have hesitated somewhat at this point; but, unless we are required to presume and undertake to provide against, a deliberate dishonesty of these parties, of which the case does not offer. the slightest suggestion, we think we would not be justified, under the circumstances of this case, in holding that this alone should defeat this mortgage. Without assuming facts of which there is no evidence, the mortgagee's interest is only to accomplish the payment of his debt; and it is the obvious interest of the mortgagor to make such payment with the least probable reduction to his stock, for the residue only is his.

It is not claimed that, as a matter of fact, any goods were sold except in the usual course of trade; and appellant's abstract

affirmatively shows that from the execution of the mortgage to the seizure by the sheriff the mortgagor was "disposing of them in the ordinary course of trade, as he had done before the execution of the mortgage." We are unable to discover, within the limits of a fair inference, any such danger to the interests of other creditors as constrains us to hold that the absence of such limitation in the power of sale in this case makes the provision presumptively fraudulent.

Lastly, the appellant claims the agreement under consideration defeats the mortgage, and makes it nugatory, because "the mortgagee can do nothing by his agent that he could not do in person, and he could not in person sell these goods at retail, and give title to any one. * * * The only way he can get or give title is to foreclose his mortgage by a public sale as by law provided,"—and, to support the proposition that any sale of the mortgaged property in behalf of the mortgagee except a public sale, as provided by Sections 4373, 4411, Comp. Laws, defeats the lien of the mortgage, cites Everitt v. Buchanan, 2 Dak. 249, 6 N. W. Rep. 439, and 8 N. W. Rep. 31. The question in that case was an essentially different one from that here presented. There the holder of the chattel mortgage had, after default in payment by the mortgagor, taken possession of the mortgaged property, and had undertaken to foreclose the rights of the mortgagor and his lessee, without their consent, by a private sale. This was in open and direct conflict with the statute, and the court so declared in an action brought by the lessee to test the right of the mortgagee to foreclose his equity of redemption by an adverse private sale. Here there is no such collision between the agreement in the mortgage and the statute referred to, for the reason that they do not travel over the same ground, and so could not collide. The Statute simply provides how the mortgagor's right of redemption may be foreclosed after he has made default in payment. It only undertakes to regulate the pursuit of the remedy for a broken contract. The agreement before us provides for the possession and management of the mortgaged property

prior to default and foreclosure. The agreement lets go just where the statute takes hold. It does not attempt to invade ground occupied by the statute. The statute prescribes how the mortgage may be foreclosed after default. The agreement seeks to avoid a default, and the necessity for foreclosure, by providing means for the payment of the debt: and they are not inconsistent with each other. What might be the rights of creditors in the event of a private sale, after default by the mortgagor, consented to by the mortgagor, in the nature of a foreclosure sale, is not now discussed nor determined; for that question is not presented by this case.

In the case before us the evidence strongly tends to show a careful and judicious exercise of the power of sale on the part of the mortgagor, which, if continued, would have conserved the interests, not only of the parties to the mortgage, but of all creditors. He testifies that, from the day the mortgage was given, he kept an accurate account of every individual article sold,—every night separating the sales of the mortgaged from the unmortgaged goods,—but that he never kept any account of the sales before that, and that he turned over the proceeds of sales to mortgagee's attorney. Looking at the mortgage in the light of the views already expressed as to the meaning, intent, and effect of the challenged provision, we see no reason to suspect that any fraud is attempted to be concealed beneath its innocent phrases. Nor can we discover how such an arrangement, if fairly executed, could work any injurious results to other creditors. We can see nothing in it which, fairly construed, would either expressly or by implication indicate any intention to allow the mortgagor to reserve any benefit to himself, or any power of disposition, inconsistent with an honest design that the property should be held and sold for the extinguishment of the debt secured upon it. Adopting, as we feel constrained to do, this view of the meaning and effect of the criticised provision in the mortgage, the case does not belong to that class of mortgages wherein is reserved to the mortgagor the possession and power of disposition of the mortgaged property for his own benefit. That the mortgagor should be per-

mitted to retain and dispose of the trust property for his own advantage and benefit would be inconsistent with the apparent purpose of the mortgage as security to another, and might be a thin disguise for fraud; but to allow him to dispose of it for the very purpose of paying the debt upon it,—the proceeds of such sales becoming *eo instanti* payment upon the mortgage,—is quite another thing. And so in Conkling v. Shelley, 28 N. Y. 360, a case hardly distinguishable in principle from this, the court, sustained such a mortgage of a stock of merchandise as valid. It was said: "Such an agreement made the mortgagors agents of the mortgagees. Their possession and their sales were in effect, those of the mortgagees. It was as if the latter had taken possession, and placed a third person in charge as agent to sell and account to them. They could not have escaped from crediting on their indebtedness the proceeds of sales made. by such an agent because he had fraudulently or dishonestly misapplied or employed the money." The same conclusion was reached in Ford v. Williams, 24 N. Y. 359, in Miller v. Lockwood, 32 N. Y. 293, and in Brackett v. Harvey, 91 N. Y. 215. In the latter case, FINCH, J., in referring to the cases just cited, said: "These cases went upon the ground that such sale and application of proceeds is the normal and proper purpose of a chattel mortgage, and within the precise boundaries of its lawful operation and effect. It does no more than to substitute the mortgagor as the agent of the mortgagee to do exactly what the latter had the right to do, and what it was his privilege and his duty to accomplish. It devotes, as it should, the mortgaged property to the payment of the mortgage debt." The controlling principle in these cases seems to be that the possession and power of sale in the mortgagor, as therein provided and qualified, is not only consistent with the trust, but is employed and consented to by both parties as a direct and convenient means of its speedy and economical execution, to-wit, the payment of the mortgage debt by the conversion of the mortgaged property into money. This doctrine seems so obviously well founded in reason, and has been so often recognized and followed in other states, that its adoption by

this court needs no further justification than a reference to the following cases, in addition to the New York cases before noticed; Kleine v. Katzenberger, 20 Ohio St. 110; Murray v. McNealy, 86 Ala. 234, 5 South. Rep. 565; Fisk v. Harshaw, 45 Wis. 665; Goodhearty v. Johnson, 88 Ill. 58: Metzner v. Graham. 57 Mo. 404. These views and conclusions are not inconsistent with the opinion of the court in Bank v. Comfort, (Dak.) 28 N. W. Rep. 855. In that case the court held the mortgage bad because it contained a reservation for the benefit of the mortgagor. In this case we hold the mortgage good because it does not contain any such reservation. The principal errors alleged in the case before us consist in refusing certain instructions presented by appellant, and in giving others to which he excepted. The instructions asked for and refused were inconsistent with the principles and the law which we think should control this case, as we have herein attempted to demonstrate, and were properly refused; and the instructions which were given, tested by these views, were correct.

In this treatment of this case, we have not forgotten the theory of our statute that the title to mortgaged property remains in the mortgagor, nor have we overlooked the apparent difficulty of making the mortgagor, who still owns the goods, the agent of the mortgagee, who does not own them; but this relation of the parties to the title to the property cannot affect the principle involved in this discussion, nor require nor justify the application of a different rule for the discovery of the true character or effect of the agreement. The quality of the transaction, as fraudulent or otherwise, is determined from its effect, possible or probable, upon the interests of other creditors; and the effect of this agreement upon those interests would be precisely the same whether the title passed to the mortgagee or whether it remained in the mortgagor. The presence or absence of vice in this agreement is tested by the inquiry whether the sales were to be made in the interest of the mortgagor, and the proceeds controlled by him, so that they might or might not be applied upon the mortgage debt, or whether they were to be made in strict and faithful execution of a real trust, so

that every decrease of the security should work a corresponding reduction of the debt.

The last assignment is that the court erred in instructing the jury that "the fact that C. J. Lane secured his brother instead of other creditors is not, in law, any evidence of intent to defraud." The fact of such relationship was in evidence, but there was no testimony tending to raise a question or doubt as to the *bona fides* of the indebtedness covered by the mortgage. The instruction was intended, and its only office and application was, to assist the jury in deciding this case upon the evidence before them. It was not claimed that there was any other evidence of fraud or fraudulent intent except that shown upon the face of the mortgage. Under these circumstances, was the fact of close relationship between the parties, of itself, evidence of fraud? If so, it would seem to follow that, if the mortgage itself had shown such relationship, it would have become the duty of the court to declare it *prima facie* fraudulent on that account. We do not think this is the law. The fact of relationship may be shown, and then it will require less evidence to justify a finding of fraud than without such fact; but the relationship alone, unconnected with other impeaching facts, is not of itself evidence of fraud. Adams v. Ryan, (Iowa,) 17 N. W. Rep. 159; Lininger v. Herron, (Neb.) 25 N. W. Rep. 578; Shultz v. Hoagland, 85 N. Y. 464. We have examined, so far as they are available to us, the authorities cited by appellants upon this point, but do not find anything in them which this view antagonizes. The judgment of the court below is affirmed. All the judges concurring.