## RICE *v.* WOOD.

### Opinion delivered January 4, 1896.

WRONGFUL LEVY—LIABILITY OF INDEMNITOR.—Parties executing a bond of indemnity to induce a levy of certain goods under attachment become participants in the trespass, where the goods are wrongfully taken thereby.

TRIAL—DIRECTING VERDICT.—It is not error to refuse to direct a verdict for the plaintiff if there is some evidence tending to support a contrary finding.

FRAUD—CONCEALMENT.—It is not a fraud for one creditor to keep another creditor from finding out about a trade with the debtor that the former is seeking to make for no other purpose than his own protection.

FRAUDULENT CONVEYANCE—PURCHASER'S LIABILITY.—The fact that a creditor, in taking a bill of sale of his debtor's property in satisfaction of his claim, is aware that the debtor intends to defraud

other creditors by appropriating to his own use certain money and accounts not affected by the bill of sale, will not render the transaction fraudulent.

ASSIGNMENT FOR CREDITORS—WHAT IS NOT.—A bill of sale by an insolvent debtor to creditors who are to pay other debts mentioned does not constitute an assigment where the liability to such other creditors, when accepted, is absolute, and does not depend on the disposition of the goods.

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

### STATEMENT BY THE COURT.

On the 15th day of December, 1890, Jones & Fulton, a firm of merchants in Hot Springs, Arkansas, executed the following instrument: "Know all men by these presents, that, for and in consideration of the sum of $8,000.00, to be paid as follows: $4,392.86 credited on the debt we owe Rice, Stix & Co. of St. Louis, Mo.; $1,804.73 credited on the debt which we owe the Clark Shoe Company, of St. Louis, Mo.; $278.58 credited on the debt we owe Pratt, Simmons & Co. of St. Louis, Mo.; $147.00 to be paid by the purchasers to J. R. Jones, Sr., being the amount of our debt to him for borrowed money; to N. L. Cathran, of Norman, Oklahoma Territory, said purchasers are to pay $104 for borrowed money due him; $65 to Maurice Ran, to be paid by the purchasers, being the amount we owe him for clerk hire; $300 to be paid by the purchasers on the debt we owe Levi Newberg & Co. of Louisville, Ky.; $400 to be paid by the purchasers to Voorhees, Miller & Rupel, of Cincinnati, Ohio, on the debt we owe them; $325 to be paid by the purchasers to M. Wolf & Sons, of Cincinnati, Ohio, on the debt we owe them; $182.83 to be paid by the purchasers to Rothschild Brothers, of St. Louis, Mo., on the debt we owe them. Now, in consideration of said sum of $8,000 to be credited and paid as aforesaid, we hereby sell and transfer and de-

liver to Rice, Stix & Co., Clark Shoe Company and Pratt, Simmons & Co., all our stock of goods, wares and merchandise contained in our store house in the city of Hot Springs, Ark., Nos. 613 and 615 Central avenue, together with all the store fixtures and fixtures therein, and hereby assign to them our lease on said store house. Witness our hands, this 15th day of December, 1890, Jones & Fulton. J. E. Jones, Jr. ` Jeff. Fulton.''

Possession of the property was delivered immediately to the agents of the vendees. Two days later one James McGuire sued out an attachment against the property of Jones & Fulton; and when the writ of attachment came to the sheriff's hands, before levying it, he demanded an indemnity bond. Thereupon the appellees, Wood & Henderson, executed and delivered to the sheriff the following instrument: ''Common Pleas Court of Garland County. John M. McGuire & Co. *v.* Jones & Fulton. We undertake to indemnify the sheriff of Garland county against all damages which he may sustain by reason of the levy of the attachment herein. [Signed] James B. Wood. J. P. Henderson. December 17, 1890.''

After receiving the indemnity bond, the sheriff levied the order of attachment upon part of the goods mentioned in the bill of sale, of the value of $260.12.

On the 20th day of February, 1891, Rice, Stix & Company and the other vendees mentioned in the bill of sale, brought suit in the Garland circuit court against Wood & Henderson, to recover the value of the goods levied upon and sold by the sheriff in the McGuire case. The complaint alleged that the plaintiffs were the owners of the goods, and that, when McGuire sued out his attachment, the sheriff demanded an indemnity bond before serving it, and that the defendants executed the bond, and that thereafter the goods were taken; that

they were of the value of $260.12; and asked judgment for that sum. The defendants, demurring to the complaint, and the demurrer being overruled, saved their exceptions and afterwards answered, denying the allegations of the complaint, and setting up further that the McGuire attachment was sustained, and alleging as a further defense that the sale by which Rice, Stix & Company *et al.* claimed the goods was fraudulent.

Upon the trial of the case, it appeared from the evidence that early in December, 1890, Jones & Fulton wrote to their creditors, asking an extension of time in which to pay their indebtedness. Among other creditors to whom they wrote, were Rice, Stix & Company, Clark Shoe Company, and Pratt, Simmons & Company, all of St. Louis. When the letters reached St. Louis, these three firms consulted in regard to the best course to pursue in the matter. The agents of the last two named firms were in Hot Springs at the time, and Rice, Stix & Company sent their agent to Hot Springs. When he arrived there on the 13th of December, he went to the store of Jones & Fulton, and shortly afterwards met the representatives of the Clark Shoe Company and Pratt, Simmons & Company. These parties entered into an extensive investigation of the financial standing of Jones & Fulton, as they say, to determine whether the extension should be granted. After looking into the condition of the affairs of Jones & Fulton, they determined to refuse the extension asked for, and began immediately trying to secure a settlement of their debts. The making of an assignment and the giving of a mortgage were both discussed. Jones & Fulton wanted to make that disposition of their property that would realize most for their creditors, and the other parties wanted that done which would most certainly result in their protection. The

representatives of these St. Louis houses acted in perfect concert for their own protection.

While negotiations were pending between these parties, a representative of another firm, to whom Jones & Fulton were indebted, was in Hot Springs, and Armstrong, who represented the Clark Shoe Company, told Jones & Fulton that, if they wanted to, they could go over and look at his goods, to keep him from finding out what was going on. Mr. Fulton testified that Brown and Armstrong, who represented Rice, Stix & Company, and Clark Shoe Company, when they were trying to get them to make the bill of sale, told them (Jones & Fulton) that they would always be their friends, and assist them in any way they could, but that this promise had nothing to do with their making the trade. He also testified that the parties said for them to keep the money they had in bank, about $850, and their accounts. Col. E. W. Rector, who represented some of the attaching creditors, (among others Voorhees, Miller & Rupel, who were to be paid $400 by the terms of the bill of sale), states that he went to see Brown, who was in charge of the store, and told him that he wanted to get the $400, and see the bill of sale. He says that Brown told him that he wanted to see Col. Murphy before paying the money, and that on the next day Murphy and Brown came to his office, and said they were ready to pay the money, but wanted him to recognize the bill of sale, and that he declined to do so. Judge Leatherman, who represented M. Wolf & Sons, who were to be paid $325 by the terms of the bill of sale, testified that he went to Brown, and asked him when he was going to pay the $325, and Brown told him that he would do so when he returned to St. Louis, and, upon being asked when he expected to return, said: "When I dispose of this stock here."

There was a difference in the testimony as to the amount of goods Jones & Fulton had in stock at the time of the sale. The inventory taken by the purchasers showed $10,129. Jones & Fulton testified that the stock amounted to $13,000 or $14,000. The defendants attacked the inventory taken by the purchasers, claiming that in certain particulars it was fraudulent, and not a true statement of the actual assets. It seems to be conceded by all parties that all the debts mentioned in the bill of sale were *bona fide*.

It was shown upon the trial that the attachment in the McGuire case was sustained, and that the goods attached sold for $115, several months after they were seized under the attachment.

The court gave eighteen instructions at the request of the plaintiffs, and refused the following, asked by them : "(18) In this case no evidence has been adduced upon which you would be legally justified in finding a verdict for the defendants. You are therefore instructed to find a verdict for the plaintiffs, assessing their damages at the value of the goods seized under the attachment of J. M. McGuire & Co. v. Jones & Fulton at the time of their seizure. (19) You are instructed that a fraud that would vitiate a sale of goods must be in the sale itself, and not in some mere device for putting other creditors off their guard, and preventing them from investigating the doings of the debtor. Though plaintiff's agents may have advised Jones & Fulton to throw the agent of Voorhees, Miller & Rupel off his guard intentionally, by ordering from him a bill of goods, that was not a fraud that entered into the bill of sale or affected it ; and this is particularly so if the advice was not acted on. (20) Fraud must consist in acts done with a fraudulent intent, not in mere intent which is not carried out ; and the secret motives of a debtor, however fraudulent, do

not vitiate the disposition of his property, provided such property is applied to the payment of debts at a rate which the law deems reasonable ; and when property is applied to the payment of debts at a rate equal to what it would bring at a fair public sale to the highest bidder, that rate is reasonable.  (21) If the plaintiffs took the goods at such a price as they would have brought at a fair public sale to the highest bidder, the transaction would not be invalidated because they advised Jones & Fulton to put their money into their pockets, and not to pay it to their creditors, if you find that such advice was given.  Fraud consists in acts, and bad advice touching other property cannot vitiate a sale." Plaintiffs excepted to the refusal of these instructions.

The court at the instance of the defendants gave eleven instructions to the jury, two of which are as follows :  "(9) If you believe from the evidence in this case that the plaintiffs, by their transactions with Jones & Fulton in the purchase of the goods, acquired all the property of Jones & Fulton except the amount which the evidence in the case shows that the said Jones & Fulton had in the bank and their accounts, and that said plaintiffs counseled or advised the said Jones & Fulton to keep the said money themselves, and not to pay the same to their creditors, and that such advice or counseling entered into said transactions between said plaintiffs and the said Jones & Fulton as an inducement for said Jones & Fulton to make said transaction with said plaintiffs, and that said Jones & Fulton, acting upon such advice of said plaintiffs, did appropriate said money to themselves, and thus deprived their creditors of it, and that said Jones & Fulton were at the time insolvent, you should find for the defendants in this case.  (11) If the jury believe from the evidence that, at the time of the conveyance made by the firm of Jones & Fulton to Rice, Stix & Company, Pratt,

Simmons & Company, and the Clark Shoe Company, of the stock of goods mentioned in the conveyance, that it was the understanding and agreement between the parties to said conveyance that the said grantees therein, to-wit: Rice, Stix & Company, Pratt, Simmons & Company and the Clark Shoe Company, or their agent or agents, were to sell the goods therein conveyed for the purpose of raising money out of which to pay their debts, and to pay the other debts mentioned in the conveyance, and, in pursuance of said agreement, possession of the said goods was delivered to their agents, then the effect of said conveyance would be an assignment and void, notwithstanding the fact that it purported to be a bill of sale on its face."

The plaintiffs excepted to the giving of each of said instructions. There was a verdict and judgment for the defendants. The plaintiffs filed a motion for a new trial, took a bill of exceptions, and appealed to this court.

*George W. Murphy* and *Rose, Hemingway & Rose,* for appellants.

1. It was error to refuse the 18th instruction asked for plaintiffs. There is not a scintilla of testimony to impeach the good faith of the plaintiffs' purchase. The debts were genuine, the price was largely in excess of the true value of the goods, and no fraud is shown. A debtor has the absolute right to turn his property over to his creditor at a fair price in satisfaction of his demand. 21 Pa. St. 495; 60 Am. Dec. 57; 23 Ark. 264; 56 *id.* 417; 42 *id.* 525; Bump, Fr. Conv. (3 ed.) 189, 45.

2. The price paid for the goods was adequate. To affect a sale with fraud, the inadequacy must be so great as to shock 'the conscience. Bump, Fr. Conv. (3 ed.) 45; Wait, Fr. Conv. sec. 232; 47 Ark. 515. If

the goods bring as much as they would at a fair public sale, the price is adequate. 41 Ark. 325.

3. The 19th instruction asked by plaintiff should have been given. The fraud must be in the sale, and not merely in some device to put off creditors. Bump, Fr. Conv. (3 ed.) 357; Wait, Fr. Conv. sec. 341; 21 Me. 286.

4. It was error to refuse the 20th asked by plaintiffs. See authorities cited on point No. 1.

5. Also in refusing the 21st, and in giving the 9th asked by the defendants. Mansf. Dig. secs. 3373-4-5; 31 Ark. 556; Bump, Fr. Conv. (3 ed.) 18-19; 4 U. S. C. C. A. 69; *Id.* 403; Burrill on Assignments, sec. 351; Wait, Fr. Conv. sec. 3.

6. This was a plain sale, and not an assignment. 53 Ark. 101; *Id.* 538; 56 *id.* 315; 36 Neb. 45; 53 N. W. 1034.

7. This case is settled by 59 Ark. 270, 303; 60 *id.* 425.

*E. W. Rector, C. V. Teague* and *Wood & Henderson*, for appellees.

1. The sale was made with intent to cheat, hinder. and delay creditors, and is void. To show this, all circumstances surrounding the sale may be considered in evidence. Bigelow on Fraud, p. 146; 50 Ark. 319; 17 Wall. 532; 31 Ark. 666; 65 Am. Dec. 154, and note. There are many circumstances to show fraud in this case: the combination of appellants, the secrecy and haste, the sale in a lump without inventory, the advice to keep their money and accounts and divide them between themselves, etc., all tend to show fraud, and the jury so found.

2. The 1st, 3d and 4th instructions given for appellants, and the 5th and 6th for appellees, show that the jury were charged correctly on the subject of fraud.

23 Ark. 258; 60 id. 431; 31 id. 666. While it is true that the law allows a creditor to buy from his debtor, who is in failing circumstances, property for the purpose of collecting his claim, without being chargeable with fraud for so doing, although he may know that other creditors will not be able to collect their demands by reason of such purchase, and that the rule applicable to such cases is different from the rule applying to one who purchases upon a new or cash consideration, yet the creditor who thus buys must act with good faith in the matter, and must not take more of his debtor's property than is necessary to pay his claim at a fair price. He must do nothing, beyond collecting his own demand, that will hinder or delay other creditors. *Twyne's Case*, 3 Rep. 81; 2 So. Rep. 737.

3. The mere inadequacy of price might not alone avoid the sale, but that, with the other things proved, is sufficient. 47 Ark. 515; 41 id. 325; 48 id. 219. The bill of sale did not express the entire contract, but there was a secret reservation for the benefit of Jones & Fulton, which hindered and delayed creditors. 31 Ark. 670; Burrill on Assignments (5 ed.), p. 255; 6 Wall. 78, 80.

4. The division and appropriation to their own *separate* and *individual* use by Jones & Fulton of the money in bank and the accounts, property of the firm, by the advice of appellants, was a fraud on the other creditors. 16 Fed. 316; 12 Pet. 221-9; 17 N. W. 353; 2 So. 735; 21 N. Y. 587; 52 id. 146; 47 Ill. 272; 34 Barb. 31; 32 id. 126; 12 N. H. 458; Burrill on Assignments (5 ed.) 307, *et seq.*; 4 Barb. 571; 41 id. 307. Another fact tending to hinder and delay creditors was that the sums assumed by appellants to be paid other creditors were to be paid in St. Louis. Bigelow on Fraud, vol 2, 375 *et seq.* and note.

5. The sale was in fact an assignment, and void for failure to comply with our laws.

6. Appellants had no cause of action on the bond against appellees. If appellants were the owners of the property, the sheriff was a trespasser, and was liable to them, as were also the plaintiffs in the attachment suit. It is doubtful whether appellees, by signing the bond, were participants in the trespass; but, if so, their liability would have to be fixed by a suit for trespass, and not by suit on the bond. There is no statute authorizing the sheriff to require an indemnity bond in attachment proceedings. If the sheriff was guilty of a tort, and appellees by signing the bond are equally guilty with him, then appellants might have sued for the tort, but they have elected to sue on contract and are bound by their complaint. The law does permit a joinder in the same suit of actions *ex contractu* and *ex delicto*. The evidence did not authorize a verdict in favor of appellants; and if one had been rendered for them, the court should have set it aside. Pom. Rem. sec. 558, 564, and notes; 2 S. W. 476; 1 Enc. Pl. & Pr. p. 194. The bond sued on is personal to the sheriff, and was made to indemnify him against all damages he might sustain by levying the attachment. If he sustained no damages, then no liability attached to the bond. 43 N. W. 795; 57 Fed. 567; 10 Am. & E. Enc. Law, p. 413.

*Rose, Hemingway & Rose*, for appellants, in reply.

Appellees contend that there is no liability on the bond because the statute requiring an indemnity bond is a part of the chapter on executions, and not of that on attachments.

(*a.*) An attachment is a preliminary execution. 23 Ark. 287; 52 *id.* 290.

(*b.*) One who gives an officer a bond of indemnity, and thereby induces him to levy, is a party to the trespass. 5 Denio, 94; 117 Mass. 459; 3 Wall. 9; 15 N. Y. 413; 81 Tex., 108; 18 Mo. 396; 30 Minn. 329; 48 Ala. 628; 1 Mo. App. 393; 34 Cal. 629; 2 Freeman, Ex. sec. 273, p. 882; 2 Brandt on Suretyship & Guar. sec. 490.

HARROD, Sp. J., (after stating the facts). The appellees contend that the judgment should be affirmed, without regard to whether there were errors committed against the appellants at the trial, because, as they claim, the suit instituted by the plaintiffs cannot be maintained under the law. They claim that the bond was personal to the sheriff, and that he alone can sue on it, and that he cannot sue until he has been damaged. It is also said that the statute makes no provisions for an indemnity bond in attachment cases. And it is further urged as a defense against the action of the plaintiffs that it is doubtful whether the defendants, by signing the bond, became participants in the trespass, and if they did become so, it is claimed that they could only be sued in trespass, and not on the bond.

*Liability of indemnitor for wrongful levy.*

If this suit was by the sheriff against the defendants on the bond, it would be necessary for him to show how and in what respect he had been damaged; and in such a case it might be necessary to determine whether the statute contemplates the indemnity bond mentioned, although it is questionable, even in that case, whether the defendants, having executed the bond under the circumstances, would be heard at all to contest its legality. But there is no such case here, for this is not a suit on the bond, but a suit against the defendants to recover the value of the plaintiffs' goods, which it is claimed were taken to pay the debt of another, and for which taking it is alleged the defendants were responsible.

The contention of appellees that it is doubtful whether they became participants in the trespass by making the bond, in our opinion, is not well taken. It seems to us that that act made them the real principals in the transaction. In order to maintain the action, it is only necessary for plaintiffs to show,—First, that they owned the goods taken; second, their value; and third, that the defendants participated in the taking, or caused the same. And the right to maintain the suit cannot be made to depend upon the existence or non-existence of any statute. It is simply the common right that every one has to recover the value of his property, when wrongfully taken. The plaintiffs, if they owned the goods, could have sued McGuire and the sheriff and the defendants jointly, if they desired, or either of them separately. *Lovejoy* v. *Murray*, 3 Wall. 19.

The only issue in this controversy that was really contested is whether plaintiffs owned the goods levied on under the McGuire attachment. Their claim rests upon the instrument executed by Jones & Fulton, and their title depends upon its integrity.

The different instructions given at the request of both parties, that appear in the record, but are not copied in our statement of the case, seem to state fairly the different propositions of law to which they relate, and to be free from error.

As to directing a verdict.

We do not find any reversible error in the refusal of the eighteenth instruction asked by the plaintiffs, which directed a verdict for them. We see but little, if anything, in the evidence that even tends to establish fraud; but, at the same time, we do not undertake to say that there is absolutely no evidence of that kind.

When concealment not fraudulent.

The nineteenth instruction by the plaintiffs should have been given. It is not a fraud for one creditor to try to keep another from finding out about a trade that

he is seeking to make, for no other purpose than his own protection.

In regard to the twentieth instruction asked by the appellants, and refused by the court, we deem it sufficient to say that, in our opinion, its refusal was not error of which the appellants can complain.

A proper disposition of this case can be arrived at by fairly construing the acts of the parties, without stopping to discuss the legal consequences of secret motives or mere intent not acted upon or carried out.

The twenty-first instruction asked by the plaintiffs, *As to liability of purchaser in a fraudulent conveyance.* and the ninth given by the court at the request of the defendants, both relate to the effect of the statement that Jones & Fulton claim that the representatives of the plaintiffs made in regard to their money in bank and their accounts. Without discussing either of these instructions in detail, we are of the opinion that the purchasers were under no obligation whatever to take the money in bank on their debts instead of the goods; nor did the future disposition of the money or accounts concern them. If their debts were *bona fide*, they had a right, under the law, to collect them either in money or property, however disastrous the consequences might be to others. Although Jones & Fulton, at the time they sold to the plaintiffs, may have intended to defraud their other creditors by appropriating to their own use the money and accounts, and although the purchasers may have known of this intention, their purchase could not be defeated on that account alone. Such was the decision of this court in *Wood* v. *Keith*, 60 Ark. 425. If the purchasing creditor's debt is honest, and his only object is to secure the payment of his own debt, he is not affected by any motive or design that the debtor may have or entertain as to his other creditors. But he will not be permitted to protect himself by any fraud to which he is a party. Fraud cuts down every-

thing, and no claim or title can rest upon any such foundation. So, in this case, if the disposition of the money in bank, and the accounts, or either of them, came up for discussion while negotiations were pending, the plaintiffs or their representatives might well have said to the vendors : "We are not concerned with that property. We care nothing about it, and your disposition of it is not material to us." The law would not attach any fraud to such words, or to any expressions of similar import.

Transaction held not an assignment.

The eleventh instruction given at the request of the defendants was clearly erroneous. There is nothing in any part of the record, either in the bill of sale or in the oral evidence, disclosing any feature of an assignment. When the appellants accepted the bill of sale, they were bound by its terms, and were liable to every creditor whose debt was assumed, and that liability was in no manner dependent upon the disposition of the stock of goods.

For the errors indicated, the cause is reversed, and remanded for a new trial.

Wood, J., being disqualified, did not sit.