COUNTS, Respondent, v. KARY, et al, Appellants

(297 N. W. 442.)

(File No. 8378. Opinion filed April 16, 1941.)

Rehearing Denied June 12, 1941.

**C. F. Manson,** of White River, and **W. J. Hooper,** of Gregory, for Appellants.

**M. L. Parish,** of Murdo, for Respondent.

SMITH, J.   The decree in a divorce action wherein Mary Kary was plaintiff and Wm. Kary, Jr., was defendant, appointed a receiver to take possession of the personal property accumulated by the parties.   The plaintiff brings the action at bar as such receiver, against the father and mother of the above-named husband, Wm. Kary, Jr., to recover the possession of specific described personalty including cattle, horses, machinery and tools, alleged to be property so accumulated by Mary Kary and her husband.   The jury returned a verdict awarding property to plaintiff and fixing its value. The judgment rendered thereon and an order denying a motion for new trial are here for review.

The right to the possession of certain property was submitted to the jury by an instruction phrased as follows: "The Court instructs that a debtor has the right under the law to prefer one creditor to another and may in good faith turn over property for the reasonable value of it in payment of a debt.   And in this case, where defendants claim that William F. Kary, Jr., about October, 1938, turned over to Cordelia Kary 5 cows, 5 heifers, 5 calves, 1 bull and 3 horses, if you believe from the evidence and all of the circumstances surrounding that at that time a debt equal to or greater than the value of these cattle and horses was due and owing by William F. Kary and Mary Winnifred Kary to Cordelia Kary, and that this property was honestly and in good faith turned over to her to apply on the debt, then as to any such horses and cattle so turned over to her your verdict should be for the defendants.   In determining the question of good faith and the condition of the account, the jury may fully consider the relations existing and the circumstances surrounding the entire transaction as shown by the evidence."

The verdict of the jury awarded the animals described in this instruction, as well as the increase thereof, to plaintiff.   No request having been made for a finding of value as to each item of property, the above-described livestock and other property to which possession was awarded plaintiff, was valued in the aggregate.   Appropriate steps were taken by appellant to challenge the sufficiency of the evidence to

support the verdict. In substance the assignment asserts that the uncontradicted and uncontroverted evidence discloses that the livestock involved in the issue submitted by the foregoing instruction was in good faith transferred to and received by Cordelia Kary in October, 1938, to apply upon a bona fide indebtedness of the son, Wm. Jr., and his wife, Mary.

Accepting the quoted instruction, to which no exception was taken, as the law of the case (Zeigler v. Ryan, 65 S. D. 110, 271 N. W. 767), we examine the evidence from the aspects indicated therein, viz., with reference to (1) existence of a bona fide indebtedness, (2) whether the property was applied as a payment thereon, and (3) whether the mother acted in "good faith", to determine whether the verdict is supported by substantial evidence (Wolff v. Stenger, 59 S. D. 231, 239 N. W. 181), or, stated in other words, to determine whether the verdict is defensible in point of sense. Jerke v. Delmont State Bank, 54 S. D. 446, 223 N. W. 585, 72 A.L.R. 7. Our review is guided by an understanding that all permissible inferences in support of the verdict must be indulged, and that testimony which is not expressly contradicted by other testimony may be so intrinsically unreasonable, or may be so controverted by circumstances disclosed by the evidence as a whole, as to make room for reasonable difference of opinion between impartial minds. Churchill & Alden Co. v. Ramsey et ux., 50 S. D. 73, 208 N. W. 406; Meloy v. Kell et al., 53 S. D. 388, 220 N. W. 863; Blake v. Hansen et ux., 64 S. D. 356, 266 N. W. 733.

What of the indebtedness? A study of the record discloses that plaintiff made no real attempt to question the existence of such an indebtedness as the instruction describes. In broad outline, the record evidences that Cordelia Kary and William Kary, Sr., lived on a ranch and operated a general store in connection therewith. William Kary, Jr., their son, his wife and their eight children owned and operated a farm nearby. Continuously from about 1925 until the spring of 1938, when domestic difficulties between the son and his wife culminated in an action for divorce, they purchased a considerable portion of their supplies on credit

at the Kary store. The story of these purchases is told in detail by three composition books in which entries were regularly made by the son, his wife, and Cordelia Kary. The current book was available to all three. As supplies were purchased, one of the three would enter the kind and amount and subsequently the mother would record the price. Thus a considerable part of these records appear in the handwriting of the son and his wife. The entries include payments made to and on behalf of the son and wife, as well as credits for cash, livestock, meat, grain, and eggs. The computations set forth in these books show a balance due to the senior Karys of over $3,000 in October, 1938.

What of the application of the livestock on the debt? The mother, Cordelia Kary, testified that in October, 1938, the son brought the animals to her ranch and said in substance that he was sorry he could not pay more on his debt, but would apply the livestock. She did not go out and examine the stuff, according to her testimony, but they agreed on the price and in his presence she made an entry in the book of account as follows:

| | |
|---|---|
| "5 cows & calves | $275.00 |
| 1 bull | 100.00 |
| 5 yearlings | 150.00 |
| 1 gelding Blue | 40.00 |
| 1 mare Bay | 30.00 |
| 1 Roan 4 yr. | 40.00 |
| | $635.00" |

Thereafter the cattle were branded and ran with the herd on the ranch.

This testimony of the mother obviously is not intrinsically unreasonable, and is not contradicted by other testimony or circumstances evidenced by the record. It is suggested that it is unreasonable to believe that the mother would receive this livestock without a count or examination. Carelessness or looseness in dealings between those closely related is not unusual. Schreyer v. Platt (Schreyer v. Scott), 134 U. S. 405, 10 S. Ct. 579, 33 L. Ed. 955.

■ We turn to a consideration of the question of "good faith." According to the law of the case, the mother had a right to receive this property in payment on account if she acted in "good faith". In such a situation "good faith" consists of an intention to apply the fair value of that which is received on the account for the benefit of the creditor, unaccompanied by any manner of secret agreement or intention to hold any part thereof for the use or benefit of the debtor. Rice v. Wood, 61 Ark. 442, 33 S. W. 636, 31 L.R.A. 609.

■ After a careful study of the record we have concluded that, aside from the relationship of the parties to the transaction, no circumstance is revealed even tending to indicate bad faith. Respondent's analysis seems to have been equally unavailing, because he points out no other circumstance, and argues that "uncontradicted evidence may be disbelieved when the witness is an interested party, or where from the very nature of things it is impossible to secure opposing testimony." That the mere fact that testimony comes from the mouth of an interested witness will not sustain a verdict in opposition thereto, if that testimony "is clear and full, not extraordinary or incredible in the light of general experience, and not contradicted, either directly or indirectly, by other witnesses or by circumstances disclosed, and is so plain and complete that disbelief therein could not arise by rational processes applied to the evidence," is established by Jerke v. Delmont State Bank, supra [54 S. D. 446, 223 N. W. 594, 72 A.L.R. 7]. Commercial Credit Co. v. Nissen, 57 S. D. 158, 231 N. W. 534; Torbet v. F. W. Woolworth Company, 59 S. D. 47, 238 N. W. 140; and see Wolff v. Stenger, supra. Close relationship justifies a careful scrutiny of the challenged transaction for badges of fraud, but such relationship, unaided by other facts and circumstances, will not support an inference of fraud or bad faith. Lane v. Starr, 1 S. D. 107, 45 N. W. 212; 24 Am. Jur. 186. It is manifest that one who attacks a transaction as fraudulent must prove his case notwithstanding the difficulties inherent in the situation. Cf. Peck v. Peck, 51 S. D. 157, 212 N. W. 872.

■ Our review of the evidence has resulted in a conclusion that it is insufficient to warrant triers of the fact in finding that the mother did not in good faith receive the livestock described in the quoted instruction as a payment on a bona fide indebtedness, and that the judgment and order of the learned trial court must be reversed.

■ A separate assignment predicates error upon the failure of the court to submit to the jury an issue dealing with the pledge of a tractor as security for the repayment of $75 advanced towards its purchase. Because an exception was not saved to the refusal of a requested instruction on that subject, and such refusal was not assigned as error, the question is not before us. SDC 33.1601.

Other matters assigned need not be discussed because it is apparent that they will not arise on a retrial of the action.

The judgment and order of the learned trial court are reversed.

All the Judges concur.