FIRST NATIONAL BANK OF
BERESFORD, South Dakota,
Plaintiff and Appellee,

v.

Donald V. ANDERSON, Defendant,

and

Carla L. Anderson, Patrick E. Anderson
and Julia M. Anderson, Defendants
and Appellants.

No. 12627.

Supreme Court of South Dakota.

Argued Feb. 26, 1980.

Decided April 23, 1980.

Rehearing Denied May 29, 1980.

James K. DeSaix of Miller Law Office, Beresford, for plaintiff and appellee.

Charles B. Haugland of Beck, Gubbrud & Haugland, Alcester, for defendants and appellants Carla L., Patrick E. and Julia M. Anderson.

DUNN, Justice.

Judgment was rendered against defendant Donald V. Anderson in the Circuit Court of the First Judicial Circuit in the sum of $115,567.10 and a conveyance from Anderson and his wife to their three minor children was set aside as fraudulent to creditors. This appeal is taken by the minor children from that portion of the judgment setting aside the conveyance. We affirm.

On December 12, 1972, Anderson received a loan from plaintiff, First National Bank of Beresford, South Dakota, in the amount of $31,000. Evidence also indicates that a previous loan was made by the bank to Anderson in December 1972 in the amount of $43,000. The bank's liability ledger indicates that Anderson was indebted to the bank in the amount of $13,365 prior to either of these loans. John Diefendorf, chairman of the board of directors of the bank, testified that the December 1972 loans were made on the basis of Anderson's financial statement and an assignment of a certain amount of stock as security. The major asset listed on the financial statement was the 160-acre farm owned by Anderson and his wife. Diefendorf's testimony indicated that this financial statement was a major consideration in the establishment of its lending policy with Anderson.

On May 2, 1973, Anderson and his wife conveyed the 160-acre farm on which they lived to their three minor children for "One Dollar and other good and valuable consideration." The "other good and valuable consideration" allegedly consisted of having the three minor children assume payments on the contract for deed by which the Andersons originally obtained the land. Notice of the conveyance was published in the *Vermillion Plain Talk*, a Clay County newspaper, on June 28, 1973. At the time of the conveyance, Anderson was indebted to the bank in the amount of $66,000.

On May 2, 1973, the date of the conveyance, Anderson obtained a renewal from the bank of the indebtedness that existed prior to the December 1972 loans. Diefendorf testified that this renewal was made in good faith reliance upon the accuracy of the representations made in the financial statement. Anderson did not inform the bank that on that very day he had conveyed the major asset listed on his financial statement to his three minor children.

After May 2, 1973, Anderson conducted at least thirteen additional loan transactions with the bank. Diefendorf testified that these transactions were in fact renewals of prior indebtedness. On occasion, Diefendorf asked Anderson for an updated financial statement, but none was forthcoming. On those occasions when the land in question was discussed in reference to a prospective loan, Anderson either affirmatively stated that the land was still an asset as reflected on his financial statement or impliedly did so by his failure to inform the bank of the conveyance.

At all times until late 1976 or early 1977, Anderson and his wife conducted their affairs as if they still owned the land. The children neither made management decisions regarding the farm nor participated in the field operations of the farm. Anderson and his wife received all income from the farm operations, made the necessary payments on the land from this income, and paid for all necessaries used by their children.

Finally, in late 1976 or early 1977, the bank became aware that the land had been conveyed to the children. Diefendorf testified that the absence of the land made repayment of the indebtedness highly questionable. According to Diefendorf, the bank's skepticism was heightened by Anderson's consistent failure over the four-year period to cooperate with the bank in attempts to reduce the indebtedness. On many occasions, Anderson failed to respond to the bank's requests for meetings to discuss the progress of the loan repayment. This action to set aside the conveyance was then instituted by the bank.

■ We must first consider the status upon which this appeal is brought before us. While the issue was not briefed by either party, the record indicates that this is an appeal from a directed verdict; however, this action was one in equity, that is, an action to set aside a conveyance. In an equitable action, the trial court may empanel a jury in an advisory capacity, but it may withdraw the issue from the jury's consideration at any time and decide the matter. *Zimmerman v. Kitzan*, 77 N.D. 477, 43 N.W.2d 822 (1950); *Kickland v. Egan*, 36 S.D. 428, 155 N.W. 192 (1915); *Thomas v. Ryan*, 24 S.D. 71, 123 N.W. 68 (1909). Thus in this equity matter, while the trial court did take the matter away from the jury, it was not a directed verdict, and our scope of review is limited to determining whether the findings of fact entered by the trial court were clearly erroneous. *Scott v. Wagner*, 274 N.W.2d 266 (S.D.1979).

SDCL 54–8–1 addresses fraudulent conveyances as follows:

Every transfer of property or charge made thereon, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor and their successors in interest and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor.

SDCL 54–8–12 is also pertinent. It states:

Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

■ It is highly significant that the transaction occurred between parents and their children. Less evidence to find fraud is required in light of this relationship than would be required in its absence. *Counts v. Kary*, 67 S.D. 607, 297 N.W. 442 (1941); *Lane v. Starr*, 1 S.D. 107, 45 N.W. 212 (1890).

■ Fraud may be established by circumstantial evidence. *Cole v. Reiley*, 35 S.D. 30, 150 N.W. 299 (1914). In the instant case, both Anderson and his wife admitted on the stand that they received no cash from their children for the conveyance. Anderson testified at trial that his financial situation on May 2, 1973, was such that he "realized the thing to do was to turn the farm over to the children." This statement is within a hair's breadth of an admission of fraud.

The evidence is incontestable that the conveyance was a mere sham. The children made absolutely no decisions regarding the management or operation of the farm. Anderson testified that he and his wife acted merely as "go-betweens" for the children, but this statement lacks even the slightest stamp of credibility.

■ The fact that the conveyance was published in the *Vermillion Plain Talk* does not absolve Anderson of his failure to advise the Beresford bank of the conveyance on the numerous occasions when the land was discussed with bank officials. Not only did he fail to advise the bank, the evidence indicates that on occasion he affirmatively represented to the bank that the land still belonged to him. Such actions constitute substantial evidence of his fraudulent intent.

■ The children's final contention that the conveyance was a gift, not a sale, is

untenable. A contract exists which demanded "One Dollar and other good and valuable consideration." The Andersons retained all decision-making power regarding the land. No gift tax was ever filed or paid.

Under the facts of this case, we cannot say that the findings of fact entered by the trial court were clearly erroneous. The judgment is affirmed.

WOLLMAN, Chief Justice, and MORGAN and FOSHEIM, JJ., concur.

HENDERSON, Justice, concurs specially.

HENDERSON, Justice (specially concurring).

I concur in the opinion of the majority and would simply add that there is an old maxim of equity quite pertinent here: You must be just before you are generous. The defendant was generous to his children before he was just with his creditors.