Robert KARY and William Kary,
Plaintiffs and Appellants,

v.

Joseph Herman KARY, Defendant
and Appellee.

No. 13347.

Supreme Court of South Dakota.

Considered on Briefs Jan. 18, 1982.

Decided April 21, 1982.

Lawrence E. Long, Martin, for plaintiffs and appellants.

Joseph Ellingson of Tobin Law Offices, P. C., Winner, for defendant and appellee.

HENDERSON, Justice.

## ACTION

This is an appeal by Robert Kary and William "Bud" Kary from a judgment of the trial court which quieted title in favor of appellee Joseph H. Kary to certain realty located in Mellette County, South Dakota. We affirm.

## FACTS

On September 5, 1969, Al Kary entered into a contract for deed to buy a certain half section of realty from his aunt, Anne Ross Anderson. Upon full performance of the contract, title to the half section would be placed in the name of Bud Kary (brother of Al Kary) and William Lee Kary (son of Al Kary), as joint tenants. The contract also provided that when Al Kary paid the entire purchase price of the aforementioned half section, his daughter, Diana Ross Kary, would receive a warranty deed for certain lots located in Parmelee, South Dakota; these lots were also owned by Anne Ross Anderson.

Al Kary was not able to meet his January 30, 1970, payment on the contract. An amendment to the contract was accordingly executed on February 13, 1970, by Anne Ross Anderson and Al Kary which modified the contract payment schedule. Al Kary died intestate in March of 1970. At the time of his death, he had paid off approximately $13,200 of the total purchase price of $30,200. Both the contract and amendment thereto provided that the instruments "shall be binding upon the heirs, executors, administrators, assigns, and legal representatives of the parties hereto."

Susan Kary, Al Kary's widow, testified that soon after Al Kary died she asked Bud Kary to assist her in making the payments on the contract; this request was refused. At trial Bud Kary denied, however, that this request was ever made, but did testify that Susan Kary asked him if he would transfer a quit-claim deed on the realty over to her; this he refused to do.[1]

Anne Ross Anderson and Susan Kary subsequently entered into a "covenant" on April 15, 1971, whereby Susan Kary agreed to pay off the original contract for deed (approximately $17,000) and place title in her name and the name of her son, William Lee Kary, as joint tenants. Also, this covenant provided that she would be responsible for any lawsuits brought against Anne Ross Anderson which might arise from disputes concerning the contract. The latter was, in a sense, a "hold harmless" clause.

In March of 1976, William Lee Kary executed a warranty deed for his half interest in the half section to his brother, Joseph H. Kary. Susan Kary likewise executed a warranty deed for her half interest in the realty to her son, Joseph H. Kary, in October of 1977. Appellant Robert Kary has been leasing the realty in question from his brother Bud Kary for several years prior to the commencement of this action and instituted this quiet title action claiming a lease-

---

1. Bud Kary concedes in his brief that, prior to the contract for deed being entered into, he was contacted by Al Kary and Anne Ross Anderson and agreed to the provisions of the contract; Bud Kary would not, however, be obligated to pay any of the purchase price.

hold interest in an undivided one-half interest through his brother. Appellee Joseph Kary moved below that Bud Kary be joined as a party plaintiff, which motion was granted. Basically, the trial court awarded title to the party who held and filed warranty deeds to the property, namely appellee Joseph Kary.

## ISSUES

### I.

Did the trial court err by holding that William "Bud" Kary was not a third-party beneficiary to the contract but rather was to hold the realty in question as a trustee? We hold that it did not.

### II.

Was the trust presumption found in SDCL 55–1–10 effectively rebutted due to the sibling relationship herein involved? We hold that it was not.

### III.

Was the trial court erroneous by not finding that Al Kary entered into the contract for the purpose of defrauding his creditors? We hold that it was not.

## DECISION

### I.

Appellants contend that Bud Kary is a third-party beneficiary under the contract and, as such, is entitled to enforce its terms. The trial court specifically found that Bud Kary "understood [that] his status under the Contract for Deed was that of a trustee, rather than a beneficial owner of the property." Further, the trial court concluded that neither Al Kary nor Anne Ross Anderson intended to benefit Bud Kary in any manner in executing the contract for deed; rather, an implied or equitable trust was created with Bud Kary as a trustee (together with William Lee Kary) to the realty.

SDCL 53–2–6 provides: "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." Generally, it must be shown that it was the promisee's (Al Kary) intent or purpose to benefit the third party before the third party achieves the status of a third-party beneficiary, with an enforceable interest in the contract.[2] See Hamill v. Maryland Cas. Co., 209 F.2d 338 (10th Cir. 1954); McCulloch v. Canadian Pac. Ry. Co., 53 F.Supp. 534 (D.Minn.1943); Coley v. English, 235 Ark. 215, 357 S.W.2d 529 (1962); Northern National Bank v. Northern Minnesota National Bank, 244 Minn. 202, 70 N.W.2d 118 (1955); Fry v. Ausman, 29 S.D. 30, 135 N.W. 708 (1912); Restatement of Contracts § 133 (1932); 17 Am.Jur.2d, Contracts § 312 (1964). We must accordingly determine if the trial court was correct in holding that Bud Kary was not a third-party beneficiary to the contract for deed.

Where there is a close familial or benevolent nexus between the promisee and the beneficiary, the primary focus is placed on the subjective intention of the promisee. See Ridder v. Blethen, 24 Wash.2d 552, 166 P.2d 834 (1946). In the quest for this subjective intent, "extrinsic evidence of all surrounding circumstances, including the promisee's own statements about his intention, must be . . . weighed." Calamari and Perillo, The Law of Contracts, p. 610 (2d ed. 1977).

Obviously, Al Kary did not testify at trial. The testimony of his widow, Susan Kary, indicated that she understood that the contract for deed was executed so as to give her husband ownership of the realty now claimed by Bud Kary. Susan Kary also testified that Al Kary owed Bud Kary nothing. Moreover, the testimony of Susan Kary combined with the necessity of amending the payment schedule of the contract indicates that the purchase of the realty in question placed a serious economic strain on Al Kary. The trial court stated in

---

**2.** This rule is applicable to both a donee and a creditor beneficiary. *Hartman Ranch Co. v. Associated Oil Co.*, 10 Cal.2d 232, 73 P.2d 1163 (1937); *see also* Restatement (Second) of Contracts, Introductory Note to Ch. 6 and Reporter's Note to § 133 (1981).

its findings of fact that "Al Kary was having financial trouble during the term of the Contract[.]"

Bud Kary testified that he thought that possibly Al Kary placed his name on the contract for deed to repay some unrecorded "debts" that he believed stemmed from when the two brothers were in a partnership together. We note, however, that aside from this testimony, there was no evidence in the record of any debts between the brothers. Bud Kary further testified that Al Kary probably thought that by deeding a portion of the realty to his brother he could be assured that the realty stayed in the family. Anne Ross Anderson deposed that she wanted Bud Kary to receive one-half interest in the land and that Al Kary agreed to this as a condition to the contract. The contract contained language to the effect that Bud Kary, along with William Kary and Diana Ross Kary, may enforce the contract as it was made for their benefit.

■ After considering all the aforementioned testimony and surrounding circumstances, we conclude that the trial court was correct in holding that Al Kary did not intend to make Bud Kary a third-party beneficiary of the realty. Although one of the facts indicate that Anne Ross Anderson desired that Bud Kary receive one-half interest in the land, other facts brought out during the trial reveal that Bud Kary understood and accepted his position as trustee for the benefit of Al Kary. The trial transcript further reveals that Bud Kary comprehended his position under the contract for deed as a "moderator" or "go-between if the thing went wrong." Moreover, Bud Kary's position as trustee for the benefit of Al Kary is reflected by the fact that Bud Kary failed to make any claim to the realty for almost eight years. His claim arose only after being joined as an involuntary plaintiff in an action commenced by his brother, Robert Kary, who claimed a

leasehold interest in the half section. The trial court found, and we believe correctly so, that "Al Kary and Anne Ross Anderson intended to create an implied or equitable trust, within the meaning of SDCL §§–1–6, [sic] when they executed the September 5, 1969 Contract for Deed." (The above typographical error by the trial court should be "SDCL 55–1–6," as SDCL 1–6 deals with state emblems.)[3] Upon considering the facts and circumstances presented in this case, we hold that an implied trust arose. *See Knock v. Knock,* 80 S.D. 159, 120 N.W.2d 572 (1963).

II.

Secondly, appellants maintain that the trial court erred when it applied the presumption found in SDCL 55–1–10 (see n.3), which gave Bud Kary the status of a trustee under the contract. According to appellants, South Dakota case law dictates that when a realty conveyance is made between closely related parties the presumption of an implied trust is rebutted and the contrary presumption arises—that the conveyance was intended to be a provision for the benefit of the related party or parties. *See Bucknell v. Johnson,* 39 S.D. 212, 163 N.W. 683 (1917); *Bem v. Bem,* 4 S.D. 138, 55 N.W. 1102 (1893). This Court in *Bem* and *Bucknell,* however, indicated that the presumption found in SDCL 55–1–10 is effectively rebutted when only a conveyance is made to the purchaser's wife or children. Here, we are concerned with a contract for deed calling for a conveyance in futuro involving brothers.

*Wallace v. Dunton,* 30 S.D. 598, 139 N.W. 345 (1913), involved a conveyance of realty between brothers. Samuel Wallace purchased a tract of South Dakota land and placed title in the name of his brother, Edward Wallace, who lived in New York. Several years after Edward's death, his heirs brought an action to quiet title in

---

**3.** SDCL 55–1–6 reads: "An implied trust is one which is created by operation of law. An implied trust arises in the cases described in §§ 55–1–7 to 55–1–10, inclusive." SDCL 55–1–10 declares: "When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

Edward's estate. Samuel's heirs, however, claimed that a presumption existed in South Dakota Civil Code section 303 (now SDCL 55–1–10) which established an implied trust between the brothers, with Edward acting only as the trustee. In holding that Edward was the owner in fee simple of the land, the Court in *Wallace* stated:

The evidence is sufficient to show that the money which was paid to Richard H. Smith [seller] as the purchase price of the land was in possession of and paid over by Samuel C. Wallace. Were it not for the fact that Samuel C. Wallace himself caused the deed to be taken in the name of Edward C. Wallace it would be a fair assumption, in the absence of other evidence, that the money in possession of Samuel C. Wallace belonged to him, but inasmuch as a resulting trust is never presumed from such a transaction, but must be proved by him who alleges it, we think that when Samuel C. Wallace paid to the seller money in his possession, and took the deed in the name of Edward C. Wallace, it may be fairly presumed, in the absence of other evidence, *that the money was the money of Edward C. Wallace.*

*Id.* at 613, 139 N.W. at 346 (emphasis supplied).

■ The distinguishing factor of *Wallace* is that the purchaser (Samuel) bought the tract of land with his brother's (Edward's) money. Here, there was no evidence to indicate that Al Kary purchased the realty with Bud Kary's money. To the contrary, Bud Kary testified that he did not pay anything for the realty in question. According to Susan Kary, when she asked Bud Kary to assist her with the payments on the contract after her husband died, Bud Kary refused. We hold that the trial court did not err in applying the presumption found in SDCL 55–1–10.

### III.

■ Appellants thirdly contend that the trial court erred in not finding that Al Kary conveyed the realty to defraud his creditors. Under appellants' contention, Bud Kary's claimed contractual right to receive the re-

alty should have been effectuated by the trial court. We disagree. In order to establish that a conveyance is fraudulent, *actual* intent to defraud must be shown. SDCL 54–8–13 expresses:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

We can find no evidence in the record of Al Kary's actual intent to defraud.

■ The issue of fraudulent intent is one of fact and not one of law. SDCL 54–8–4. The trial court accordingly entered the following finding of fact: "Al Kary's motive in having the land conveyed to William [Bud] Kary and William Lee Kary was to conceal his beneficial ownership of the half section." No finding was entered by the trial court pertaining to fraud. To place one's beneficial ownership out of public view or public record does not mean, ipso facto, that one is perpetrating fraud upon creditors.

■ "It is manifest that one who attacks a transaction as fraudulent must prove his case notwithstanding the difficulties inherent in the situation." *Counts v. Kary,* 67 S.D. 607, 612, 297 N.W. 442, 444 (1941); *Hove v. Frazier,* 79 S.D. 551, 115 N.W.2d 217 (1962). Also, a "[c]lose relationship [between the grantor and the grantee] justifies a careful scrutiny of the challenged transaction for badges of fraud, but such relationship, unaided by other facts and circumstances, will not support an inference of fraud or bad faith." *Counts v. Kary,* supra, 67 S.D. at 612, 297 N.W. at 444.

Although a fraudulent conveyance may be established by circumstantial evidence, *First National Bank of Beresford v. Anderson,* 291 N.W.2d 444 (S.D.1980), appellants offered scant evidence at trial to indicate that Al Kary was in financial straits when the contract was executed in 1969. We are cognizant that in 1970 Al Kary was unable to make the contract payment. At the time of trial, however, Susan Kary testified that

the estate of Al Kary (which is still pending) was solvent. Further, no other evidence was presented reflecting claims of creditors or of Al Kary's insolvency. Under these evidentiary circumstances, we hold that the trial court was correct in not finding that Al Kary entered into the contract for the purpose of defrauding creditors.

The judgment of the trial court is affirmed.

All the Justices concur.